Stacey **VAUGHAN** and Axia Services, Inc., Petitioners,

v.

Robert **McMINN**, Respondent.

**ZURICH AMERICAN INSURANCE OF ILLINOIS**, Petitioner,

v.

Daniel F. **RAEL** and Yvonne M. Rael, Respondents.

Nos. 96SC497, 96SC504.

Supreme Court of Colorado, En Banc.

Sept. 22, 1997.

Rehearing Denied Oct. 20, 1997.

Gibson Dunn & Crutcher, L.L.P., Gregory J. Kerwin, Phillip F. Smith, Jr., Denver, for Petitioners Stacey Vaughan and Axia Services, Inc.

Roger Fraley, Jr., Denver, for Respondent Robert McMinn.

Hibschweiler & Johnson, James D. Johnson, Sheila E. Barthel, Denver, for Petitioner Zurich American Insurance Company of Illinois.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Steven U. Mullens, P.C., Steven U. Mul-

lens, Colorado Springs, for Respondents Daniel and Yvonne Rael.

Retherford, Mullen, Johnson & Bruce, L.L.C., Neil C. Bruce, Colorado Springs, for Amicus Curiae Colorado Defense Lawyers Association.

John Berry, Denver, for Amicus Curiae The Workers' Compensation Coalition.

Justice BENDER delivered the Opinion of the Court.

This proceeding under C.A.R. 50 is the consolidation of two lawsuits, each involving an insured who filed a common law tort claim against his insurance company for bad faith in handling the insured's workers' compensation claim. The insurance companies, the petitioners in this court, moved to dismiss for lack of subject matter jurisdiction. In both cases, the district court granted the motion, reasoning that the General Assembly's 1991 amendment to section 8–43–304(1), 3 C.R.S. (1997) of the Colorado Workers' Compensation Act (the Act) abrogated the common law tort of bad faith in the context of workers' compensation by providing the insured with an exclusive administrative mechanism to redress the insurance company's mishandling of its insured's claim. Both district courts concluded that the statutory remedy provided by section 8–43–304(1) divested district courts of jurisdiction over common law claims of bad faith mishandling of workers' compensation claims by their insurance company. The insured claimants appealed to the court of appeals. Before the resolution of that appeal, however, the insurance companies petitioned this court for immediate certiorari review under C.A.R. 50. We granted certiorari and consolidated the two actions for purposes of this proceeding.[1]

The 1991 amendment to section 8–43–304(1) does not explicitly, or by necessary implication, preclude a private civil remedy for an insurer's mishandling of a workers' compensation claim. We hold that the 1991 amendment did not abrogate the common law tort of bad faith breach of an insurance

---

**1.** The issue was framed on certiorari as follows: Whether the post-*Savio* amendments to the Colorado Workers' Compensation Act now provide the internal redress which was missing when *Travelers Insurance Co. v. Savio,* 706 P.2d 1258 (Colo.1985), was decided, so as to dictate a different result under the current statutory scheme.

contract in the context of a workers' compensation claim. This tort remains a viable cause of action in Colorado. We reverse the holding of both district courts and remand to the respective district courts for further proceedings consistent with this opinion.

## I.

Respondents in this court, plaintiffs in the district court (the claimants), requested workers' compensation benefits after they allegedly sustained injuries during the course and scope of their employment. They subsequently sued their workers' compensation carriers,[2] alleging, among other things, that the insurance companies failed to process their claims in a timely manner and failed to pay benefits to which they were entitled.[3] The claimants proceeded on a common law tort theory for bad faith mishandling of an insurance claim, a cause of action that we held applicable in the workers' compensation context in *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1271 (Colo.1985).

The insurance companies moved to dismiss, arguing that this tort was no longer a valid cause of action. The insurance companies contended that the General Assembly's 1991 amendment to the Act abrogated the 1985 holding of *Savio* by creating an exclusive administrative remedy for bad faith claims, which divested district courts of jurisdiction over common law torts of bad faith. The district courts agreed that *Savio* was no longer controlling precedent and granted the insurance companies' motions to dismiss.

The claimants appealed and the insurance companies responded by petitioning this court for certiorari review under C.A.R. 50,[4]

to determine whether the 1991 amendment to section 8–43–304(1) abrogated the common law tort of bad faith in mishandling a workers' compensation claim which we set forth in *Savio*.

## II.

■ Every insurance contract contains an implied covenant of good faith and fair dealing which imposes upon insurers a duty to act in good faith in their dealings with their insured. See *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984). A breach of the covenant of good faith and fair dealing by an insurer may give rise to tort liability. The basis for this liability is the special nature of the insurance contract relative to other types of contracts. As we explained in *Trimble*:

> The motivation of the insured when entering into an insurance contract differs from that of parties entering into an ordinary commercial contract. By obtaining insurance, an insured seeks to obtain some measure of financial security and protection against calamity, rather than to secure commercial advantage. The refusal of the insurer to pay valid claims without justification, however, defeats the expectations of the insured and the purpose of the insurance contract. It is therefore necessary to impose a legal duty upon the insurer to deal with its insured in good faith.

*Id.* (citations omitted).

Because workers' compensation serves the same purpose as insurance in general, we acknowledged the applicability of the common law covenant of good faith and fair dealing to workers' compensation insurance

---

**2.** Respondent McMinn also sued the claims representative who processed his claim, Stacey Vaughan.

**3.** Respondent McMinn also sought relief in the Division of Workers' Compensation by requesting a hearing before an administrative law judge concerning the mishandling of his workers' compensation claim. The ALJ assessed a penalty against the insurance company, with half of this penalty payable to the Division of Workers' Compensation and the other half payable to McMinn. We note that section 8–43–304(1) provides that the insured shall receive 75% rather than 50% of a penalty against an insurer who mishandles a

claim, however, this issue is not before us on certiorari. We also do not reach issues related to claim preclusion and offset, as they are beyond the scope of the question presented on certiorari.

**4.** C.A.R. 50 allows either party to a case, newly filed or pending in the court of appeals, to petition for supreme court review when the case involves an issue of first impression; the overruling of a previous decision of the supreme court; an important state question which should be determined by the supreme court; or an issue of imperative public importance which requires immediate determination in the supreme court.

contracts in *Savio,* 706 P.2d at 1271. The insurance company in *Savio* argued that the covenant of good faith and fair dealing should not apply in the context of workers' compensation because the Act is a comprehensive statutory scheme which abrogates all civil remedies for torts within the scope of the Act. We agreed that the Act established exclusive as well as comprehensive remedies for injuries that are covered by the Act, *see id.* at 1264; however, we determined that injuries incurred because of an insurer's bad faith in processing a claim fell beyond the scope of the Act. *See id.; see also Brooke v. Restaurant Servs., Inc.,* 906 P.2d 66, 67 (Colo.1995). We stated that the Act is primarily directed to compensation for employment-related injuries and death, and that injuries from the mishandling of a claim do not arise out of and in the course of employment. *See Savio,* 706 P.2d at 1265. We analogized an insurer's bad faith conduct to the tortious acts of a co-employee acting outside the course of employment and to the malpractice of an employer's physician, both of which constitute causes of action which may be brought directly by an employee outside of the Act's administrative procedures. *See Wright v. District Court,* 661 P.2d 1167, 1171 (Colo.1983); *Kandt v. Evans,* 645 P.2d 1300, 1302 (Colo.1982). We stated that the Act contained no limitation on the potential remedies available for such conduct. *See Savio,* 706 P.2d at 1264. Emphasizing that "this court has declined in the past to find legislatively imposed limits on an employee's remedies outside of the Act unless such limits are express," we concluded that the tort of bad faith applied to aggrieved claimants seeking redress against their insurance carriers.

In *Savio,* the insurance company pointed to two provisions of the Act that authorized the imposition of a penalty for insurer misconduct. Section 8–44–106, 3 C.R.S. (1973) provided that the intentional, knowing, or willful violation of the Act would result in the suspension or revocation of the carrier's li-

cense to conduct a compensation business in Colorado. The second provision was the predecessor to section 8–43–304(1), which, at the time of Savio's accident, read:

> Any employer or insurer ... who violates any provision of [this Act] ... for which no penalty has been specifically provided, or fails, neglects, or refuses to obey any lawful order made by the director or commission or any judgment or decree made by any court as provided by [this Act] shall be punished by a fine of not more than one hundred dollars for each such offense.

§ 8–53–126, 3 C.R.S. (1973). The insurance company argued that these penalty provisions provided the insured with a statutory remedy and, by implication, abolished the common law tort of bad faith. *See Savio,* 706 P.2d at 1266. However, the penalty assessed under section 8–43–304(1) was payable to the workers' compensation fund rather than to the aggrieved claimant. *See Savio,* 706 P.2d at 1267. We rejected the insurance company's assertion that the penalty statutes provided a remedy for the insured claimant, because the provisions did not provide for a remedy payable to the aggrieved claimant.

In 1991, the General Assembly repealed and reenacted the Act. Among the changes was an amendment to section 8–43–304(1) which increased the penalty for mishandling claims from one hundred to five hundred dollars per day, and provided that this penalty was payable to the aggrieved claimant rather than the subsequent injury fund. *See* ch. 219, sec. 35, § 8–43–304(1), 1991 Colo. Sess. Laws 1291, 1323–24. The General Assembly amended this statute again in 1992 to require that seventy-five percent of the assessed penalty would be payable to the aggrieved claimant and the remaining twenty-five percent would be payable to the subsequent injury fund. *See* ch. 238, sec. 1, § 8–43–304(1), 1992 Colo. Sess. Laws 1828.[5]

The insurance companies argue that the 1991 amendment was the General Assembly's response to our holding in *Savio,* and that

---

5. The General Assembly added additional subsections to the statute in 1994 which provided, in essence, that no penalty shall be assessed against a violator who cures the violation within twenty days from the date that the aggrieved files a complaint unless the aggrieved proves by clear and convincing evidence that the violator knew or reasonably should have known that he or she was in violation. *See* ch. 309, sec. 11, § 8–43–304, 1994 Colo. Sess. Laws 1873, 1878–79.

this amendment evinces the legislative intent to provide an exclusive administrative remedy for the bad faith mishandling of a workers' compensation claim. They argue that the 1991 amendment abrogated the common law tort claim for bad faith recognized in *Savio,* and therefore, this tort no longer represents a cognizable cause of action in Colorado.

### III.

■ To discern the legislative intent of the 1991 amendment to section 8–43–304(1), we are guided by familiar principles of statutory construction. Our primary task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute. *See Brooke,* 906 P.2d at 70. We must construe the statute as a whole to give consistent and harmonious effect to all of its parts. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991). When the plain language of a statute is clear and unambiguous, we will not resort to interpretive rules of statutory construction and we will apply the statute as written. *See Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo.1992).

■ The General Assembly possesses the authority to abrogate common law remedies, *see* § 2–4–211, 1 C.R.S. (1997); however, "we will not lightly infer a legislative abrogation of that right absent a clear expression of intent." *Kristensen v. Jones,* 195 Colo. 122, 124, 575 P.2d 854, 855 (1978). "Statutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication." *Van Waters,* 840 P.2d at 1076; *see also Robinson v. Kerr,* 144 Colo. 48, 52, 355 P.2d 117, 119–20 (1960) (stating that statutes are not presumed to alter the common law unless the act expressly provides for alteration); *Colorado State Bd. of Pharmacy v. Hallett,* 88 Colo. 331, 335, 296 P. 540, 542 (1931) (stating that the General Assembly has the authority to repeal the common law either expressly or by the enactment of an inconsistent statute); *Collard v. Hohnstein,* 64 Colo. 478, 479, 174

P. 596, 596–97 (1918) (stating that, to deprive a plaintiff of a common law cause of action, "it is essential that it affirmatively appear that the statutes themselves, either directly or by necessary implication, abrogate such a right").

■ In addition, the General Assembly's creation of a statutory remedy does not bar pre-existing common law rights of action unless the legislature clearly expresses its intent to do so. *See Brooke,* 906 P.2d at 68. A statute is merely cumulative if the object of the legislature was not to interfere with a plaintiff's existing rights, but to give him or her additional relief. *See Williams,* 805 P.2d at 422 (holding that the treble damages provision of Colorado's No–Fault Act did not abolish the common law tort of bad faith breach of insurance contract and that the treble damages provision was a cumulative remedy available to an aggrieved claimant); *Denver & Rio Grande Ry. Co. v. Henderson,* 10 Colo. 1, 2, 13 P. 910, 911 (1887).

■ Applying these principles to this case, we conclude that the 1991 amendment contains no explicit legislative mandate restricting the claimant to the statutory penalty as the exclusive remedy for a claimant's bad faith cause of action against his workers' compensation insurance carrier. The legislature, by raising the penalty from one hundred to five hundred dollars and awarding this penalty to the injured claimant, did not directly state or imply that this award precludes common law bad faith claims under *Savio* in the workers' compensation arena. The allotment of the proceeds of this penalty—or a portion thereof, as in the 1992 amendment—to the injured claimant is not inconsistent with a common law cause of action in bad faith. The amendment's plain language does not limit an aggrieved claimant's rights. The new language vests the aggrieved claimant with additional administrative rights to remedy the bad faith conduct of his or her insurance carrier.

The insurance companies argue that the 1991 amendment was a response to our 1985 decision in *Savio.* We agree that one could imagine a connection between our discussion in *Savio* regarding the absence of a statutory

remedy and the legislature's 1991 amendment that provides some relief to a claimant. However, the standard for abrogation, "expressly or by clear implication," requires more than an imagined connection. For example, in *Passamano v. Travelers Indemnity Co.*, 882 P.2d 1312, 1323 (Colo.1994), this court held that section 10–4–609(1), 4A C.R.S. (1994), which required automobile insurance companies to provide an insured with the opportunity to purchase uninsured motorist coverage, applied to automobile rental companies. The General Assembly responded by amending section 10–4–609(1) as follows: "This subsection (1) shall not apply to motor vehicle rental agreements or motor vehicle rental companies." *See* ch. 51, sec. 4, § 10–4–609(1)(b), 1995 Colo. Sess. Laws 142, 143. This amendment was inconsistent with our holding in *Passamano* and clearly implied abrogation. *See also Padilla v. Industrial Comm'n*, 696 P.2d 273, 280–81 (Colo.1985) (abrogated by ch. 77, sec. 1, § 8–51–108, 1985 Colo. Sess. Laws 355); *T & T Loveland Chinchilla Ranch v. Bourn*, 173 Colo. 267, 272–73, 477 P.2d 457, 460 (1970) (abrogated by ch. 225, sec. 2, § 81–2–9(3), 1971 Colo. Sess. Laws 905, 906). We will not strain to give language other than its plain meaning. *See Williams*, 805 P.2d at 422 (Colo.1991). Even if a connection could be imagined between *Savio* and the 1991 amendment to section 8–43–304(1), the 1991 amendment does not satisfy the criteria for abrogation of an important common law remedy.

We note that section 8–43–304(1) was amended in 1991, 1992, 1994, and 1997. The legislature never explicitly abrogated the common law tort of bad faith despite many opportunities to do so. The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area. *See Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1054 (Colo.1995). In addition, the legislature is presumed to adopt the construction which prior judicial decisions have placed on particular language when such language is employed in subsequent legislation. *See People v. Cooke*, 150 Colo. 52, 62, 370 P.2d 896, 901 (1962). We also note that sections 8–41–102 and 104, which explicitly delineate the common law torts abrogated by the Act, apply only to claims regarding the death or personal injury of the employee. *See* §§ 8–41–102, 104, 3 C.R.S. (1997). No mention is made of the tort of bad faith, which represents a separate injury from the death or personal injury underlying the employee's workers' compensation claim. These statutes were repealed and re-enacted in 1990, hence, the legislature had the opportunity to amend these statutes but did not elect to do so.

Finally, the insurance companies argue that the rationale for *Savio* dissipated after the 1991 amendment. The absence of a remedy within the Act was an important factor considered in *Savio*. However, the holding of *Savio* was that an insurer's mishandling of a workers' compensation claim by his insurance carrier fell outside the reach of the Act. *See Savio*, 706 P.2d at 1264. Even if the 1991 amendment is an adequate remedy to injured claimants—and we express no opinion on this point [6]—the elimination of part of the rationale supporting our precedent does not meet the established standard required for abrogation of a common law cause of action.

## IV.

Because the Colorado Workers' Compensation Act does not explicitly bar bad faith

---

**6.** The claimants contend that a portion of the remedy is not equivalent to compensation, which would make them whole. The claimants also argue that certain claims are excluded from the penalty provision of section 8–43–304(1), for example, claims under 8–43–401(2). We note that both our court of appeals and the Industrial Claim Appeals Office have held that where the insurer fails to pay medical bills, the specific penalty provisions in section 8–43–402(2)(a) supersede the general penalty provisions of section 8–43–304(1) and the claimant receives no portion of the penalty assessed against the insurer. The court of appeals has held that the appropriate remedy under these circumstances is for the claimant to file a tort claim for bad faith. *See, e.g., Malloy v. Lincoln Community Hospital*, No. 96CA1757, slip op. at 2 (Colo.App. May 22, 1997) (not selected for official publication) *petition for cert. filed*, (July 21, 1997) (No. 97SC523); *In re Claim of Malloy*, No. W.C. 4–148–045, slip op. at 3 (Industrial Cl.App. Office Sept. 13, 1996) (final order). The issue of whether section 8–43–402(2)(a) supersedes section 8–43–304(1) is not encompassed within our grant of certiorari, and we express no opinion on this point.

claims brought by claimants against their insurance companies and because the 1991 amendment to section 8–43–304(1) is not inconsistent with *Savio,* we decline to conclude that the legislature intended the Act to abolish the common law remedy for bad faith that is presently available to aggrieved claimants. We hold that the 1991 amendment to section 8–43–304(1) does not abrogate the common law tort of bad faith breach of insurance contract set forth in *Travelers Insurance Co. v. Savio,* and that this case retains its viability as binding precedent. We therefore reverse the respective district courts' orders dismissing these complaints, and we remand each of these cases to the appropriate district court for further proceedings consistent with this opinion.

VOLLACK, C.J., dissents.

Chief Justice VOLLACK dissenting:

In *Travelers Insurance Co. v. Savio,* 706 P.2d 1258 (Colo.1985), we recognized that workers' compensation insurers were subject to a common law cause of action for mishandling claims in bad faith. The majority holds that the General Assembly's 1991 amendment to section 8–43–304(1), 3 C.R.S. (1997), of the Colorado Workers' Compensation Act (the Act) does not abrogate our decision in *Savio.* In my view, the General Assembly abolished the common law tort recognized in *Savio* when it added a remedy for bad faith to section 8–43–304(1). Accordingly, I dissent.

## I.

"In construing statutes, courts must give effect to the intent giving rise to the legislation." *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1053 (Colo.1995). The intent of the legislature must be determined by looking to the language of the statute according to its plain and ordinary meaning. *See People v. Murphy,* 919 P.2d 191, 194 (Colo. 1996). In determining legislative intent, courts should consider the law as it existed before the legislative enactment, the problem addressed by the legislation, and the statutory remedy created to cure the problem. *See Schubert v. People,* 698 P.2d 788, 793–94 (Colo.1985).

The majority concludes that the tort of bad faith breach recognized in *Savio* is still viable because the General Assembly did not intend for the bad faith remedy in section 8–43–304(1) to be exclusive. In explaining its conclusion, the majority notes that "the 1991 amendment contains no explicit legislative mandate" indicating that the remedy in section 8–43–304(1) is exclusive. Maj. op. at 408.

In my view, the legislature is not required to abrogate the common law explicitly. In Colorado, an established common law rule may also be abrogated by clear implication: "[I]f the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication." *See Lunsford v. Western States Life Ins.,* 908 P.2d 79, 87 (Colo.1995); *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo. 1992). Furthermore, we should evaluate the entire Act—not just the 1991 amendment—to determine whether the General Assembly intended the section 8–43–304(1) remedy to be exclusive. *See Kelly v. Mile Hi Single Ply, Inc.,* 890 P.2d 1161, 1163 (Colo.1995) ("[T]o give full import to the purposes of the Act, all portions thereof should be read together and harmonized."). Guided by these rules of statutory interpretation, I believe that the General Assembly intended to abrogate the common law tort recognized in *Savio* by adding an exclusive remedy for bad faith to section 8–43–304(1).

The General Assembly created a statutory remedy for bad faith when it amended section 8–43–304(1) in 1991. As so amended,[7] section 8–43–304(1), 3B C.R.S. (1991 Supp.), provided in relevant part:

Any employer or insurer ... who violates any provision of [the Act], or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the

---

7. Section 8–43–304(1) was amended again in 1992 and 1994, but these amendments did not change the exclusive nature of the remedy.

director or panel ... shall be ... punished by a fine of not more than *five hundred dollars per day* for each such offense, *payable to the aggrieved party.*

(Emphasis added.) Prior to the 1991 amendment, insurers could be fined up to one hundred dollars per day under the Act for dealing with claimants in bad faith, but the fine was paid to the subsequent injury fund instead of the injured claimant. *See* § 8–43–304(1), 3B C.R.S. (1990 Supp.). In this respect, the fine operated as a penalty on the insurer but provided no remedy for the claimant. In 1991, the General Assembly transformed the penalty into a remedy by increasing the fine to five hundred dollars per day and directing that the fine be paid to the injured claimant.

By adding this new remedy to the Act, the General Assembly undermined the primary rationale of *Savio*. *Savio* recognized the common law tort of bad faith primarily because there was no statutory remedy for bad faith. *See Savio*, 706 P.2d at 1266 ("Any recovery for [bad faith breach] must be realized in courts of law because the Act provides no remedy for these injuries."). The General Assembly directly addressed this concern by adding a remedy for bad faith to section 8–43–304(1). The General Assembly's addition of this new remedy was no coincidence. It was an intentional effort to provide the exact remedy that *Savio* found lacking.[8]

Furthermore, according to section 8–41–102 of the Act, this new statutory remedy is the exclusive remedy for an insurer's bad faith breach. Section 8–41–102, 3B C.R.S. (1997), of the Act provides in part:

> [A]ll causes of action, actions at law, suits in equity, proceedings, and statutory and *common law rights and remedies* for and on account of such death of or personal injury to any such employee and accruing to any person *are abolished except as provided in said articles.*

(Emphasis added.) The meaning of this section is clear. All remedies contained in the Act are exclusive. This interpretation is supported by several of our prior decisions which held that the broad language of the Act articulates a legislative intent to establish exclusive remedies. *See Savio*, 706 P.2d at 1264; *see also Kelly*, 890 P.2d at 1163 ("Recovery under the Act is meant to be the exclusive remedy for workers covered by its provisions."); *Roper v. Industrial Comm'n*, 93 Colo. 250, 253, 25 P.2d 725, 726 (1933) (noting that one of the fundamental aims of the Act is to replace all existing remedies with the procedures supplied by the Act). Because section 8–43–304(1) provides the exclusive remedy for bad faith breach, it necessarily abrogates the common law tort recognized in *Savio*. .

## II.

The General Assembly's 1991 amendment to section 8–43–304(1) must be considered in light of this court's 1985 decision in *Savio*. *Savio* recognized the common law tort of bad faith breach primarily because there was no statutory remedy for bad faith in 1985. Because the General Assembly added such a remedy to section 8–43–304(1) in 1991, the common law remedy recognized in *Savio* is no longer viable. Continuing to recognize the common law remedy would frustrate the purpose of the Act by slowing down the adjudication process and by subjecting claimants and insurers to unpredictable judgments. The General Assembly intended to avoid these problems when it added a remedy for bad faith to section 8–43–304(1). Accordingly, I dissent to the holding of the majority.

---

8. One dissenter in *Savio* invited the General Assembly to amend the Act: "[I]f the legislature is satisfied with the result reached by the majority, nothing further need be done. If dissatisfied, the Act can be appropriately revised by the legislature." *Savio*, 706 P.2d at 1278 (Rovira, J., dissenting). The General Assembly responded to this invitation when it added the new remedy to section 8–43–304(1).