James F. KELLY, Petitioner,

v.

MILE HI SINGLE PLY, INC., a Colorado corporation; and Michael T. James, Respondents.

No. 93SC750.

Supreme Court of Colorado, En Banc.

March 6, 1995.

Schaden, Lampert & Lampert, Brian J. Lampert, Denver, for petitioner.

Anderson, Campbell & Laugesen, P.C., J. Fern Black, Denver, for respondent Mile Hi Single Ply, Inc.

Makris, Hunsaker & Melonakis, P.C., William J. Hunsaker, Michael S. Keilly, Denver, for respondent Michael T. James.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari in *Kelly v. Mile Hi Single Ply, Inc. and Michael T. James*, 873 P.2d 13 (Colo.App.1993) to decide two questions: (1) whether a corporate officer's election to reject workers' compensation coverage allows the corporate officer to pursue a tort action against an employee of the corporation, and (2) whether such an election removes the officer from the exclusive remedy provisions of the Workers' Compensation Act of Colorado (Act). The court of appeals recognized that an election to reject coverage allows an injured employee to sue his or her employer. *Kelly*, 873 P.2d at 14. It further held that the right to sue is limited to the employer, explaining that the rejecting officer has no right to sue a covered co-employee whose remedies remain governed by the Act's exclusivity provisions. *Id.* Finally, it determined that the stipulation signed by the parties to attain final judgment precluded any action against the employer. *Id.* at 15. We affirm the judgment of the court of appeals.

## I

In 1988, Michael T. James (James) and James F. Kelly (Kelly) were involved in an automobile accident that left Kelly a paraplegic. At the time of the accident both Kelly and James were employed by Mile Hi Single Ply, Inc. (Mile Hi), a closely held corporation. Kelly was the president and sole stockholder of Mile Hi. James worked as a laborer and crew supervisor. The men were returning from a business trip when the accident occurred. James was driving an automobile leased by Kelly's wife.[1]

When the accident occurred Mile Hi had workers' compensation insurance for its employees, and James was covered under that policy. Kelly had previously exercised his right to reject coverage under the Act as a corporate officer and owner of more than ten percent of the corporate stock. See § 8-41-106.5, 3B C.R.S. (1983).[2] As a result, Kelly was not considered an employee under the Act. James, however, remained subject to the Act's provisions.

Kelly sued James and Mile Hi to recover damages for his injuries. He argued that because he elected to reject workers' compensation coverage, he retained his common law right to bring an action against James for negligence, and against Mile Hi under a theory of vicarious liability for James' alleged negligent conduct. James and Mile Hi moved to dismiss on the grounds that the Act barred common law tort actions against them. James argued that he was immune from suit based on the doctrine of co-employee immunity. Mile-Hi claimed immunity based on the exclusivity provisions of the Act, and argued that James' immunity would

---

1. The automobile was insured by United States Fidelity & Guaranty Co. (USF & G). USF & G paid Kelly the $300,000 policy limit for his injuries.

2. At the time Kelly rejected coverage his election was authorized by section 8-41-106.5, 3B C.R.S. (1983), Rejection of coverage by corporate officers, which provided:

    (1) [A] corporate officer of a corporation may elect to reject the provisions of articles 40-54 of this title. If he so elects, said corporate officer shall provide written notice of such election to the corporate insurer of his corporation by certified mail.

    . . . . .

    (4) For the provisions of this section, "corporate officer" means the chairman of the board, president, vice-president, secretary or treasurer who is an owner of at least ten percent of the stock of the corporation,....

    This statute was repealed and reenacted without substantial change at section 8-41-202, 3B C.R.S. (Supp.1994). It now allows members of limited liability companies the right to reject coverage.

extend to Mile Hi because Kelly's claims were based on the doctrine of vicarious liability.

The trial court granted James' motion to dismiss. Kelly appealed to the court of appeals. After finding that the trial court had not entered a final disposition with respect to Kelly's claims against Mile Hi, the court of appeals remanded the case for a rule 54(b) determination. In response, the parties entered into a stipulation for dismissal of all parties, stating:

> The parties stipulate and agree that any claims Plaintiff may have against Defendant Mile Hi Single Ply, Inc. are based on vicarious liability solely as a result of any liability of Defendant James and since judgment has entered in favor of Defendant James, judgment in favor of Defendant Mile Hi Single Ply, Inc. should also enter, dismissing all claims against Defendant Mile Hi Single Ply, Inc. This Order of Judgment of dismissal will dismiss all of Plaintiff's claims in this action against both Defendants so that the entire case may be recertified [to] the Colorado Court of Appeals.

In affirming the order of dismissal the court of appeals explained that "under the general scheme [of the Act], an employee is entitled to expect freedom from tort suits in exchange for giving up the right to sue in tort." *Kelly,* 873 P.2d at 14. The court further concluded that Kelly could not seek relief from Mile Hi "since he stipulated that the only relief he sought against Mile Hi was based on respondeat superior." *Id.* at 15.

## II Statutory scheme

### A. Owner-officer rejection of coverage

■ The Act is a comprehensive insurance scheme created to "assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike." § 8–40–102(1), 3B C.R.S. (1994 Supp.). Recovery under the Act is meant to be the exclusive remedy for workers covered by its provisions. E.g., *Popovich v. Irlando,* 811 P.2d 379 (Colo.1991); *Bailey v. C.P. Constr. Inc.,* 837 P.2d 277, 279–80 (Colo.App. 1992) (Workers' compensation is employee's exclusive remedy against employer for work-related injury, and thus employer who has complied with insurance provisions of the Act, as well as injured worker's co-employees are immune from any common-law liability for such injuries.)

We have explained that to give full import to the purposes of the Act, all portions thereof should be read together and harmonized. *McBride v. Industrial Comm'n,* 97 Colo. 166, 169, 49 P.2d 386, 388 (1935). Because the Act has been substantially amended since its enactment in 1919, giving effect to all sections often requires the reconciliation of potentially conflicting provisions. Here, we consider the Act's exclusivity provisions as they affect a corporate owner-officer's election to reject coverage.

Though the Act is intended to provide exclusive remedies for all employees injured on the job, the General Assembly has authorized corporate officers who also own at least ten percent of the corporate stock the option to reject workers' compensation coverage. This exception, recognized in 1983, was introduced in response to small business owners' complaints that the self-coverage requirement under the Act unduly burdened their operations. See Hearings on S.B. 236 Before the Senate Committee on Business Affairs and Labor, 54th Gen.Ass., 1st Reg.Sess. (hearing tape 83–11, Feb. 28, 1983 at 16:49–17:00); Hearings on S.B. 236 Before the House Committee on Business Affairs and Labor, 54th Gen.Ass., 1st Reg.Sess. (hearing tape 83–21, Apr. 12, 1983 at 10:47–11:00). Prior to adopting the amendment, the House and Senate Business Committees heard testimony from several business owners who explained that the Act denied them the autonomy to make insurance coverage choices tailored to their individual needs. Further, these owners were liable for additional premiums to cover corporate officers who performed only limited corporate functions, and

often received no salary.[3]

The 1983 amendment provided two primary benefits for small business owners; the right to reject compensation coverage and to avoid its premiums, and the corresponding right to choose their coverage without unnecessary duplication from the compensation scheme. Throughout the legislative hearings, the bill's proponents were mindful that individuals who were both owners and employees would be reluctant to sue themselves to recover compensation benefits.

### B. Limitation on excepted employees' right to sue

In 1987, the General Assembly amended the Act to address the rights and liabilities of independent contractors who, like owner-officers, have a limited right to reject coverage under the Act. House Bill 1215, was introduced in response to the court of appeals' decision in *Oliver Construction Co. v. Industrial Commission of Colorado,* 680 P.2d 1308 (Colo.App.1983), cert. denied (Colo.1984), where the court held that prime contractors could be liable for injuries to independent sub-contractors who had elected to reject coverage under the Act. See Hearing on H.B. 1215 Before the Senate Committee on Business Affairs and Labor, 56th Gen.Assem., 1st Reg.Sess. (hearing tape 87–12, Feb. 26, 1987, at 14:25–15:32); Hearing on H.B. 1215 Before the House Business Committee, 56th Gen.Assem., 1st Reg.Sess. (hearing tape 87–22, Apr. 8, 1987, at 14:47–15:22), (hereinafter House Hearing on H.B. 1215). After *Oliver,* general contractors took exception to premium increases required to cover employees who had voluntarily rejected coverage. Though the facts in *Oliver* differ from the case at bar, the legislation was written to apply to officer-owners who similarly reject compensation coverage.[4]

When the General Assembly limited rejecting employees' rights to make any claims under the Act, it created a corresponding limitation on those individuals' rights to sue separately for tort damages.[5] The limitation was premised on the belief that when an individual "chooses to opt out of Workmens' Comp. [they] can't have the best of both worlds." House Hearing on H.B. 1215 (Mary Ann Tebedo, R., El Paso, Bill sponsor). That is, an individual rejecting coverage to save money on the premiums cannot then come back and sue the employer under the common law for work related injuries. The bill proponents explained "[w]e provided a no-fault insurance plan for you [employers], and we really want you to take advantage of it."[6] Id. The cap on tort recovery was intended so that "businesses would know

---

**3.** Of primary concern were those businesses where family members served as corporate officers. Before the Act was amended these corporations were required to obtain the minimum compensation coverage of $15,000, even when the officer-employee received no salary.

**4.** The legislation was intended to return the law "to where we were before the *Oliver* case, ... when [an individual] chooses under current law to opt-out from workmen's compensation, the law says then that [he] shall have no claim for Workmens' Compensation under the articles that we have." House Hearing on H.B. 1215, statement by Mary Ann Tebedo, R., El Paso, Bill Sponsor.

**5.** Section 8–41–401(3) provides in pertinent part:

Any individual who is excluded from the definition of "employee" pursuant to section 8–40–202(2) or who does not obtain coverage under a policy of workers' compensation insurance pursuant to section 8–40–302(5), 8–41–202 or 8–44–102 shall not have any cause of action of any kind under articles 40 to 47 of this title.... The total amount of damages pursuant to any cause of action resulting from a work-related injury brought by such individual which would otherwise have been compensable under articles 40–47 of this title shall not exceed fifteen thousand dollars, except in any cause of action brought against another not in the same employ.

§ 8–41–401(3), 3B C.R.S. (1994 Supp.).

**6.** The bill's sponsors stated that they originally planned to limit all actions by rejecting employees, explaining that the employee's choice to reject compensation coverage shifted to them the risk of loss from a work related injury. After concluding that the elimination of an individual's right to sue would be unconstitutional, the house sponsor proposed a $10,000 cap on tort actions. At a hearing on the bill, the house reduced the cap from $10,000 to $5,000. On second reading the Senate increased the amount to $26,292, after which the Conference Committee proposed the $15,000 cap contained in the current statute. This amount reflects the General Assembly's consideration of an employer's liability for tort actions when suit is brought by an employee who rejects coverage under the Act.

what their liability will be, and can plan for that in any business decision." Id. When the Committees considered the remedies available to excepted employees the testimony focused on the employers' ability to forecast potential claims. The potential liability of co-employees was not considered.

### C. Rejecting officers' claims against co-employees

■ We now consider the effect that an officer's rejection of coverage has on employees who remain within the workers' compensation scheme. Though no statutory provision expressly addresses co-employee liability under the Act, we have interpreted the Act to preclude actions between co-employees. *Kandt v. Evans,* 645 P.2d 1300, 1304–05 (Colo.1982); see also *Popovich v. Irlando,* 811 P.2d 379 (Colo.1991). We adopted the doctrine of co-employee immunity in Kandt, where we stated that the premise of reciprocity underlying the Act supported our decision that covered employees were immune from actions brought by co-employees. There, we reasoned that "[o]ne of the things [a co-employee] is entitled to expect in return for what he has given up is freedom from common-law suits based on industrial accidents in which he is at fault." *Kandt,* 645 P.2d at 1305; see also Arthur Larson, 2A Larson's Workmen's Compensation Law § 72.21 (1994) (explaining "[t]he great majority of states and the Longshoremen's Act now exclude co-employees from the category of 'third persons[ ]' " who can be sued outside of workmens' compensation legislation). We agree with the court of appeals that it would be unjust to burden a co-employee with liability based on an officer's election to reject coverage under the Act when the co-employee is covered by the Act, and his or her exclusive remedy for any work-related injuries is dictated by the Act.

We hold, therefore, that co-employees are immune from common law actions brought by an officer who has rejected coverage under the Act. Our decision to insulate co-employees from common law actions is based on the status of the defendant co-employee, and not on that of the rejecting officer. It makes no difference whether the employee bringing the action is covered by the Act or has rejected coverage, provided the co-employee's exclusive remedies are found in the Act. To decide otherwise would require us to elevate the interests of the rejecting officer over those of a co-employee who has no knowledge or control over the rejecting officer's decision, and moreover, receives no benefit from the rejection of coverage. Because the doctrine of co-employee immunity focuses on the status of the covered employee, we now turn to the related question of the extent to which a rejecting officer is removed from the provisions of the Act.

### III

### A. Rejecting officer's removal from act's exclusive remedies

■ Initially, we recognize that the Act unambiguously provides that an employee who rejects coverage "shall not have any cause of action of any kind under article 40 to 47 of this title." § 8–41–401(3), 3B C.R.S. (1994 Supp.). Because the Act bars a rejecting employee from recovery under the Act, it implicitly restores to these employees common law rights of action. Indeed, the court of appeals interpreted the Act to provide for tort claims, explaining "an election to reject coverage allows an injured employee to sue his or her employer." *Kelly,* 873 P.2d at 14. The General Assembly also recognized that its elimination of remedies under the Act for rejecting employees could give rise to tort actions outside of the Act. However, because rejection is not encouraged, the General Assembly limited the recovery for such an action to $15,000. See discussion supra part IIB.

Section 8–41–103 restores common law defenses to employers who may be subject to such actions:

If an employer has complied with the provisions of articles 40–47 of this title, including the provisions thereof relating to insurance, and an action is brought against such employer or such employer's insurance carrier to recover for personal injuries or death sustained by an employee who has elected not to come under said articles, such employer and such employer's insur-

ance carrier shall have all the defenses to the action which they would have had if said articles in part 2 of article 2 of this title had not been enacted. § 8–41–103, 3B C.R.S. (1994 Supp.).[7]

Further, allowing a limited action against an employer does not give rise to the same inherent unfairness that supports the doctrine of co-employee immunity. First, the employer benefits from the employee's election to reject coverage in the form of reduced insurance premiums. Second, an employee can only reject coverage if he or she is both an officer and owner of ten percent of the corporate stock. Thus, the employer is aware of the officer's election to reject coverage, and able to insure against any potential claims. We agree, therefore, with the court of appeals' conclusion that a rejecting officer is removed from the Act's exclusivity provisions, but only to the extent that these provisions affect the employer/employee relationship.

### B.  Effect of the parties' stipulation

■ Though the trial court dismissed Kelly's claims against James alone, Kelly chose to appeal the order granting summary judgment as to both defendants "on the theory that Defendant Mile Hi Single Ply, Inc. is only vicariously liable and therefore the same issues pertain to both Defendants; . . . ." Joint Stipulation at 1. The court of appeals relied on the parties' stipulation and dismissed Kelly's claims against Mile Hi, stating that "Kelly cannot now seek relief under § 8–41–401(3) from Mile Hi since he stipu-

lated that the only relief he sought against Mile Hi was based on respondeat superior." 873 P.2d at 15. Because Kelly stipulated to the dismissal of his claims against Mile Hi based on James' immunity from suit, we agree with the court of appeals that the parties' stipulation now precludes Kelly from suing Mile Hi.[8]

### V  Summary

In summary, we hold that co-employees are immune from tort actions brought outside of the Act by officers who have rejected coverage, and affirm the court of appeals ruling that the trial court properly dismissed Kelly's action against James.

We further hold that a rejecting officer is removed from the exclusivity portions of the Act to the extent they affect the employer/employee relationship, and that any action brought by a rejecting officer is subject to the $15,000 limitation contained in section 8–41–401(3). Finally, we agree with the court of appeals that Kelly's stipulation that the claim against Mile Hi required dismissal because James was immune from suit precludes Kelly from now bringing an action against Mile Hi. The judgment of the court of appeals is affirmed.

---

7. While this section clearly contemplates suits against an employer, we disagree with Kelly's contention that, by implication, it extends to employees. As the trial court and the court of appeals pointed out, the Act defines both employer and employee. As the Act relates to the rights and remedies of each, we do not believe it an oversight that the common law defenses are restored to the employer alone.

8. We do not decide today whether, absent the stipulation, Kelly's claims against Mile Hi would stand. We do not consider whether co-employee immunity automatically extends to employers when claims are based on vicarious liability because this question is not now before the court.