Kenneth G. SNOOK, Plaintiff–Appellant,

v.

JOYCE HOMES, INC., a Colorado corporation, Defendant–Appellee.

No. 07CA2352.

Colorado Court of Appeals, Div. VI.

Feb. 5, 2009.

Leventhal, Brown & Puga, P.C., Benjamin Sachs, Lorraine E. Parker, Leslie J. Stratton, Denver, Colorado, for Plaintiff–Appellant.

Wood, Ris & Hames, P.C., Mark R. Davis, Andrew D. Peterson, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge MÁRQUEZ.*

In this negligence action, plaintiff, Kenneth G. Snook, appeals the trial court's judgment holding that defendant, Joyce Homes, Inc., was his statutory employer, rejecting his constitutional challenge to section 8–41–401(3), C.R.S.2008, of the Workers' Compensation Act (Act), concluding that Snook's claims were limited to $15,000, and dismissing his claims with prejudice. We affirm.

## I. Background

Joyce Homes is a home builder that constructed a home in Highlands Ranch. Snook was a sole proprietor and an independent contractor who did trim work on the home under a contract between Snook and a subcontractor, Total Interior Trim Systems (Total Interior), which had agreed to do the work for Joyce Homes. Although Snook's contract with Total Interior required him to obtain workers' compensation insurance, he neglected to do so.

While performing the trim work, Snook fell from scaffolding, injuring his right leg, ankle, and foot. He commenced this action against Joyce Homes and others, alleging

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2008.

that the scaffolding had been negligently constructed, causing it to fall.

Joyce Homes filed a C.R.C.P. 56(h) motion for determination of a question of law, asking the trial court to determine whether it was Snook's statutory employer, and, if so, whether Snook's damages were capped at $15,000 by operation of section 8–41–401(3). The trial court concluded that Joyce Homes was Snook's statutory employer; it was undisputed that Snook, a sole proprietor, had elected not to obtain workers' compensation insurance; and pursuant to section 8–41–401(3) any recovery by Snook was limited to $15,000.

By a separate order, the trial court rejected Snook's constitutional challenges to section 8–41–401(3), holding that the statute does not violate the Colorado Constitution's prohibition against special legislation and does not deny him substantive due process. The court reasoned that the damages cap chosen was not arbitrary or capricious and that the provision is reasonable and rational because it recognizes that sole proprietors have a choice of whether to be covered. The trial court granted Joyce Homes' motion to dismiss Snook's claims against it upon its tender of $15,000 into the trial court's registry. The trial court certified that Snook was entitled to entry of final judgment under C.R.C.P. 54(b).

## II. Constitutional Challenge

Snook contends that section 8–41–401(3) violates the Colorado Constitution's prohibition against special legislation; and the statute's damages cap violates his right to equal protection and due process under the law. We are not persuaded.

### A. Standard of Review

■■■ We review a trial court's assessment of the constitutionality of a statute de novo. *E–470 Pub. Highway Auth.*, 91 P.3d 1038, 1041 (Colo.2004). We presume that a statute is constitutional until shown otherwise. *Culver v. Ace Elec.*, 971 P.2d 641, 646 (Colo.1999). "The party asserting the unconstitutionality of the statute bears the burden of proving its invalidity beyond a reasonable doubt." *Id.*

### B. Prohibition Against Special Legislation

Colorado Constitution article V, section 25 prohibits the enactment of special legislation:

> The general assembly shall not pass ... special laws ... for limitation of civil actions ... [or] granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. In all other cases, where a general law can be made applicable no special law shall be enacted.

■■■ "The prohibition against special legislation was enacted, in part, 'for the purpose of preventing class legislation—that is, legislation that applies to some classes but not to others without a reasonable basis for distinguishing between them.'" *People v. Canister*, 110 P.3d 380, 382 (Colo.2005) (quoting *City of Montrose v. Pub. Utils. Comm'n*, 732 P.2d 1181, 1190 (Colo.1987)). The provision tests whether "legislation is 'general and uniform in its operation upon all in [a] like situation.'" *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 440–41 (Colo.2000) (quoting *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 370 (Colo.1994)). A statute violates the prohibition against special legislation if it creates an illusory class or one "that is drawn so that it will never have any members other than those targeted by the legislation." *Canister*, 110 P.3d at 384.

■■■ Judicial review of a statute under article V, section 25 "focuses on whether legislation creates valid classifications, and, if so, whether the classifications are reasonable and rationally related to a legitimate public purpose." *City of Greenwood Village*, 3 P.3d at 441. If the classification is reasonably related to a legitimate government purpose, the statute does not violate article V, section 25. *In re Interrogatory on H.B. 91S–1005*, 814 P.2d 875, 886 (Colo.1991); *see also City of Greenwood Village*, 3 P.3d at 441. Moreover, if there is a distinguishing factor, then the General Assembly may properly adopt the classification, even if some inequality may result. *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822, 828 (Colo.1982).

### 1. Classification

Snook contends that section 8–41–401(3) is special interest legislation that arbitrarily and unreasonably benefits and grants special privileges or immunities to a specific class, namely corporations that contract out their regular business, while subjecting individual independent contractors and sole proprietors who are negligently injured to significant physical and fiscal disadvantages and risks. We do not agree.

Snook does not contend that the class is an illusory class of one, as it could comprise numerous individuals. We assume that the classification here is genuine and therefore must determine whether the classification is reasonable and rationally related to a legitimate government purpose. *See In re Interrogatory on H.B. 91S–1005*, 814 P.2d at 885.

 The "workers' compensation scheme was intended, in part, to create predictable expenses for employers in light of the planning difficulties that accompany common law tort liability." *Pulsifer v. Pueblo Prof'l Contractors, Inc.*, 161 P.3d 656, 663 (Colo.2007). The purpose of section 8–41–401(3) is to encourage participation in the workers' compensation system and limit the exposure of those contractors who obtain coverage from lawsuits or claims brought by uncovered independent contractors who are injured on the job. *See Stampados v. Colo. D & S Enters., Inc.*, 833 P.2d 815, 819 (Colo. App.1992) ("the purpose of [section] 8–41–401(3) was to ... bar[ ] claims by independent contractors who *choose* to reject coverage, thereby encouraging them to obtain coverage").

> The limitation [on damages] was premised on the belief that when an individual "chooses to opt out of Work[ers'] Comp. [he or she] can't have the best of both worlds." House Hearing on H.B. 1215 (Mary Ann Tebedo, R., El Paso, Bill sponsor). That is, an individual rejecting coverage to save money on the premiums cannot then come back and sue the employer under the common law for work related injuries. The bill proponents explained "[w]e provided a no-fault insurance plan for you [employers], and we really want you to take advantage of it." *Id.* The

cap on tort recovery was intended so that "businesses would know what their liability will be, and can plan for that in any business decision." *Id.*

*Kelly v. Mile Hi Single Ply, Inc.*, 890 P.2d 1161, 1164–65 (Colo.1995) (footnote omitted). Thus, "[t]he General Assembly has shifted the risk of work-related injuries costing more than fifteen thousand dollars to individuals who have the choice to participate in the workers' compensation system." *Pulsifer*, 161 P.3d at 663.

*Pulsifer* and other cases that have examined section 8–41–401(3) have not specifically addressed the statute's constitutionality. Nonetheless, the court in *Pulsifer* noted that, "absent constitutional infirmities," courts were obliged to follow the legislature's "expressed intent," "harsh though it may seem to those subject to the statute's limits." *Pulsifer*, 161 P.3d at 663. This suggests that constitutional irregularities in the statute had not been identified.

 We conclude that section 8–41–401(3) creates a class that is rationally and reasonably related to the legitimate government purposes of encouraging participation in the workers' compensation system and protecting the interests of compliant employers. *See In re Interrogatory on H.B. 91S–1005*, 814 P.2d at 885.

### 2. Amount of the Damages Cap

 Snook nevertheless argues that the amount of the cap is unreasonably low, arbitrary, and not rationally related to the purpose of encouraging participation in the workers' compensation system. We reject this argument.

 The existence of a cap on damages is not, per se, unconstitutional. Other legislative caps on damages have been upheld. *See Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 582 (Colo.2004) (upholding damages cap imposed by the Health Care Availability Act (HCAA)); *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901, 907 (Colo.1993) (the limitations on damage awards imposed by the HCAA do not violate the guarantee of equal protection or a

party's right to due process of law); *Scharrel v. Wal–Mart Stores, Inc.*, 949 P.2d 89, 95–96 (Colo.App.1997) (upholding the statutory cap on noneconomic damages).

Here, the legislative history included in the record reveals that the amount of the cap was reached by compromise. First Conference Committee on H.B. 1215, 56th Gen. Assemb., 1st Sess. (May 12, 1987). In arriving at the amount, the General Assembly addressed the competing concerns of providing support for sole proprietors, while encouraging participation in the workers' compensation system and protecting the interests of builders and general contractors. Hearings on H.B. 1215 before the H. Comm. on Business Affairs and Labor, 56th Gen. Assemb., 1st Sess. (Feb. 26, 1987); Hearings on H.B. 1215 before the S. Comm. on Business Affairs and Labor, 56th Gen. Assemb., 1st Sess. (Mar. 24, 1987).

In light of the General Assembly's efforts to balance these competing interests, we conclude that the amount of the statutory cap has a rational basis in fact and is rationally related to legitimate governmental purposes. *Charlton v. Kimata*, 815 P.2d 946, 951 (Colo. 1991). We therefore conclude that Snook has not demonstrated beyond a reasonable doubt that the statute violates the constitutional ban against special legislation.

## C. Equal Protection and Due Process Protections

We also reject Snook's contention that because it was arbitrarily chosen and prevents him from being fully compensated for his injuries, the damages cap violates his right to equal protection and due process. Although the cap limits Snook's recovery, we do not perceive a violation of his equal protection or due process rights.

### 1. Procedural Due Process

At the outset, we note that Snook does not specify whether his due process challenge is raised on procedural or substantive grounds. Any procedural due process claim on the basis that the damages cap improperly prevents Snook from receiving a complete recovery has already been rejected by both the United States and Colorado Supreme Courts.

*See Gibbes v. Zimmerman*, 290 U.S. 326, 332, 54 S.Ct. 140, 78 L.Ed. 342 (1933) ("[A]lthough a vested cause of action is property and is protected from arbitrary interference, the appellant has no property, in the constitutional sense, in any particular form of remedy; all that he is guaranteed by the Fourteenth Amendment is the preservation of his substantial right to redress by some effective procedure." (citation omitted)); *Scholz*, 851 P.2d at 907 (plaintiff cannot articulate a procedural due process claim because the "constitutional guarantee of due process is applicable to rights, not remedies").

### 2. Equal Protection and Substantive Due Process

Snook does not distinguish his equal protection challenge to the statute from his due process challenge. Essentially, he asserts that the damages cap was arbitrarily chosen and precludes him from recovering even his most basic economic damages; thus, the recovery allowed does not bear a reasonable relationship to the actual damages incurred. We reject this challenge.

The "threshold question in any equal protection challenge is whether the legislation results in dissimilar treatment of similarly situated individuals." *Duran v. Indus. Claim Appeals Office*, 883 P.2d 477, 481 (Colo.1994). This identical analysis also applies to a substantive due process challenge. *People v. Harper*, 111 P.3d 482, 484 (Colo.App.2004) ("the analysis mandated under substantive due process 'essentially duplicates' the analysis required under rational basis equal protection"). Both equal protection and substantive due process challenges require a court to determine whether the challenged policy or statute creates a suspect class or affects a fundamental right. *Jaffe v. City & County of Denver*, 15 P.3d 806, 811 (Colo.App.2000). "In the absence of a traditionally suspect class, the implication of a fundamental right, or some other classification warranting review under intermediate scrutiny, we will apply a rational basis standard of review." *People v. Ellis*, 148 P.3d 205, 210 (Colo.App.2006); *see Calvert v. Indus. Claim Appeals Office*, 155 P.3d 474, 477

(Colo.App.2006) (a rational basis test is employed to analyze substantive due process challenges that do not implicate a fundamental right). "Under that standard, a classification is presumed constitutional and does not violate equal protection unless it is proven, beyond a reasonable doubt, that the classification has no rational basis or is not rationally related to a legitimate governmental purpose." *Duran*, 883 P.2d at 482. Workers' compensation benefits are not a fundamental right. *Id.* The rational basis test therefore applies to Snook's challenge.

We have already determined that there is a rational basis for the damages cap. Although the cap limits a plaintiff's recovery and may result in inequity in its operation, because it is rationally related to its intended purposes, we conclude that the damages cap does not violate Snook's constitutional right to equal protection or substantive due process. *See Norsby v. Jensen*, 916 P.2d 555, 563 (Colo.App.1995) ("in the area of economics and social welfare, a statutory classification does not violate the equal protection clause merely because the classification is imperfect, and, if the classification has some reasonable basis, it does not offend the Constitution simply because 'in practice, it results in some inequality' " (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)) ).

## III. Statutory Employer

Last, Snook contends that the trial court erred in concluding that Joyce Homes was his statutory employer. He argues that disputed issues of material fact precluded summary judgment on this issue. We do not agree.

■ Under C.R.C.P. 56(h), a trial court may enter an order deciding a question of law if "there is no genuine issue of any material fact necessary for the determination of the question of law." We review questions of law under C.R.C.P. 56(h) de novo. *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC*, 187 P.3d 1199, 1202 (Colo.App. 2008).

■ A statutory employer is one who conducts any "business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor, irrespective of the number of employees engaged in such work." § 8–41–401(1)(a), C.R.S.2008. The general test to determine an entity's status as a statutory employer pursuant to section 8–4–401 "is whether the work contracted out is part of the regular business of the constructive employer." *Finlay v. Storage Tech. Corp.*, 733 P.2d 322, 323 (Colo.App.1986), *aff'd*, 764 P.2d 62 (Colo.1988). The work performed by the subcontracted worker must be "such part of his regular business operation as the statutory employer ordinarily would accomplish with his own employees." *Pioneer Constr. Co. v. Davis*, 152 Colo. 121, 125, 381 P.2d 22, 24 (1963); *Finlay*, 733 P.2d at 323.

Here, it is undisputed that the business of Joyce Homes was constructing residential homes and that Snook was a sole proprietor and was hired as an independent contractor by one of Joyce Homes' subcontractors to perform trim work. Snook does not dispute the contracts Joyce Homes proffered in support of its motion, demonstrating its relationship with Total Interior, and, in turn, Total Interior's relationship with Snook. In his deposition, which Joyce Homes also proffered, Snook admitted he knew he was contractually obligated to obtain workers' compensation coverage, but failed to do so. These undisputed facts reflect the absence of any genuine issue of material fact that Snook was a sole proprietor and an independent contractor not covered by the workers' compensation system, and that Joyce Homes was his statutory employer.

■ Snook responded to the evidence presented by Joyce Homes by arguing that it had denied that it was a general contractor, that it entered into certain subcontracts, and that it did not oversee certain warranty work. He further argued that Joyce Homes had admitted only that certain warranty repairs would be performed. Because Joyce Homes meets the definition of a statutory employer under the undisputed facts, these arguments are of no avail. The definition of statutory employer does not require that Joyce Homes be a general contractor or that it oversee all work on the project. We also

note that in support of these arguments, Snook relied primarily upon Joyce Homes' answer to Snook's amended complaint and upon its counterclaims. Allegations that Joyce Homes did not oversee warranty work but rather contacted the subcontractor "responsible for overseeing its own work" and that Total Interior paid another subcontractor to perform warranty work, even if true, do not address the question whether Joyce Homes was Snook's statutory employer.

To the extent Snook disputes that home construction is Joyce Homes' regular business and argues that this creates a disputed issue of material fact precluding judgment in Joyce Homes' favor, we conclude that Snook has not presented specific facts establishing the existence of triable issues of fact.

■ The burden of establishing the non-existence of a genuine issue of material fact rests with the movant. Once the moving party has met this burden, however, the burden shifts to the nonmoving party to establish that a triable issue of fact exists. *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712–13 (Colo.1987). To meet this shifted burden, a nonmovant may not rest upon the pleadings, but must present specific facts demonstrating the existence of disputed facts. *Brown v. Teitelbaum*, 830 P.2d 1081, 1084–85 (Colo.App.1991) ("[A] genuine issue of material fact cannot be raised simply by allegations of pleadings or argument of counsel. Rather, in response to a motion for summary judgment, an adverse party must by affidavit or otherwise set forth specific facts showing there is a genuine issue for trial.").

We conclude that the trial court properly determined under the undisputed evidence in the record that Joyce Homes was Snook's statutory employer within the meaning of section 8–41–401(1)(a) and did not err in entering judgment for Joyce Homes.

The judgment is affirmed.

Judge HAWTHORNE and Judge TERRY concur.