The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 31, 2025

## 2025COA99

**No. 25CA0061, *Ramirez v. KLM Construction* — Workers' Compensation — Coverage and Liability — Contractors and Lessees — Rejection of Coverage by Corporate Officers and Others — Statutory Damages Cap — Cause of Action Brought Against Another Not in the Same Employ — Principal Parties**

A division of the court of appeals considers, as a matter of first impression, whether a corporate officer of a single-member corporation who rejects workers' compensation insurance coverage under section 8-41-202, C.R.S. 2025, of the Workers' Compensation Act of Colorado (WCA), is subject to the statutory damages cap set forth in section 8-41-401(3), C.R.S. 2025, of the WCA.

Applying the supreme court's interpretation of section 8-41-401(3), as set forth in *Pulsifer v. Pueblo Professional Contractors, Inc.*, 161 P.3d 656 (Colo. 2007), and principles of agency law, the division concludes that the damages cap applies

only if the rejecting corporate officer is a "principal party" to the agreement for services.  Because the plaintiff here is not a principal party to the agreement, the division concludes that the damages cap does not apply to his claim.

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0061
City and County of Denver District Court No. 23CV31669
Honorable Jill D. Dorancy, Judge

---

Juan M. Ramirez, Jr.,

Plaintiff-Appellee,

v.

KLM Construction, Inc., a Colorado corporation,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Taubman*, J., concurs
Tow, J., specially concurs

Announced December 31, 2025

---

Miller & Law, P.C., James F. Scherer, Littleton, Colorado, for Plaintiff-Appellee

Montgomery Amatuzio, Justin C. Mankin, Hayleigh P. Lidbury, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, KLM Construction, Inc. (KLM), appeals the judgment in favor of plaintiff, Juan M. Ramirez, Jr.  We affirm.

I.    Background

¶ 2    Property owners[1] hired KLM as the general contractor to construct a residential duplex in Denver (the project).  As specified in the construction contract between KLM and the property owners, KLM was solely responsible for selecting and hiring any subcontractors for the project.  KLM entered into an oral contract with All City Plumbing and Sewers, Inc. (All City) to install plumbing for the project.  Ramirez owns 100% of All City's corporate shares and is its sole employee and corporate officer.

¶ 3    A few months before subcontracting with KLM, Ramirez, in his capacity as the corporate officer of All City, rejected workers' compensation insurance (WCI) for himself as permitted under section 8-41-202(2), C.R.S. 2025, by filing a workers' compensation coverage rejection form with the Colorado Division of Workers'

---

[1] The property owners and Ramirez reached a settlement, which included a stipulation to dismiss the property owners as parties to the lawsuit, so they aren't parties to this appeal.

Compensation. Ramirez's rejection of WCI remained in effect during All City's work on the project.

¶ 4     KLM hired a second subcontractor[2] to complete framing work for the project. The framing subcontractor installed a temporary, plywood subfloor over an excavated area of the property that would later become the basement. The temporary subflooring contained two openings for the future locations of stairways to the basement. No guardrails or warnings were present around the subfloor openings. When Ramirez was installing plumbing for the project, he fell through one of the subfloor openings and sustained severe injuries (the accident).

¶ 5     Ramirez filed a complaint against KLM under section 13-21-115, C.R.S. 2025, the Colorado Premises Liability Act. KLM asserted various defenses and asserted in part that any damages Ramirez could recover were statutorily limited to $15,000 under section 8-41-401(3), C.R.S. 2025 (statutory damages cap), of the Workers' Compensation Act of Colorado (WCA).

---

[2] Ramirez and the second subcontractor stipulated to the second subcontractor's dismissal from the case. Thus, the second subcontractor is not a party to this appeal.

¶ 6    Ramirez filed a motion asking the court to determine as a question of law whether any damages he recovered were subject to the statutory damages cap.  He argued that because he had rejected WCI in his capacity as All City's corporate officer, the WCA allowed him to bring a civil action for his work-related injury.  Relying on *Pulsifer v. Pueblo Professional Contractors, Inc.*, 161 P.3d 656 (Colo. 2007), he also argued that the statutory damages cap didn't apply to his claim because he and KLM weren't "in the same employ."  In support of this argument, Ramirez asserted that (1) KLM and All City were the parties to the plumbing subcontract; (2) Ramirez's contract for services was with All City; and (3) any claim he had against All City was subject to the $15,000 statutory damages cap, but his claim against KLM wasn't.

¶ 7    In its response to the motion, KLM asserted that "Ramierz [sic] and/or All City Plumbing were performing paid services pursuant to the plumbing subcontract with KLM when the [accident] occurred."  KLM noted that under *Pulsifer*, "another not in the same employ" as the injured party is one who is not a principal party to the agreement for services for pay.  KLM asserted that "Ramirez was not performing plumbing services for the benefit of [All City] . . . [;]

3

rather, Ramirez was performing services for pay for the principal to [the] agreement, KLM." Thus, it argued, the statutory damages cap applied because KLM wasn't a third party to the services agreement.

¶ 8 The district court agreed with Ramirez and concluded that the statutory damages cap didn't apply because the agreement for services for pay was between All City and Ramirez, which meant KLM was a third party and "another not in the same employ."

¶ 9 After the court ruled in Ramirez's favor, the parties filed a "Joint Motion for Entry of Stipulated Final Judgment," in which they stipulated to certain facts, KLM stipulated to liability, and the parties requested that the court enter a final judgment under C.R.C.P. 54(a). The court adopted the parties' stipulation and entered a judgment in the amount of $30,000 in Ramirez's favor. KLM now appeals the judgment, arguing that the statutory damages cap applies to Ramirez's claim.

¶ 10 As explained below, we agree with the district court that the statutory damages cap isn't applicable, but for reasons other than those on which the district court relied.

## II. Applicable Legal Principles

### A. The WCA

¶ 11    "The General Assembly enacted the WCA to protect employees who sustain work-related injuries," *Curry v. Brewer*, 2025 COA 28, ¶ 12, by "assur[ing] the quick and efficient delivery of disability and medical benefits to injured workers . . . without the necessity of any litigation," § 8-40-102(1), C.R.S. 2025.  Litigation isn't necessary because the WCA provides employers and employees an exclusive remedy for work-related injuries in exchange for their mutual relinquishment of common law rights and defenses.  *See id.*

¶ 12    The WCA requires certain employers to provide their employees with insurance coverage for work-related injuries.  *Curry*, ¶ 12; *see* §§ 8-42-101 to -127, C.R.S. 2025.  However, the General Assembly has carved out an exception to the insurance coverage requirement for three groups of individuals: independent contractors, sole proprietors, and corporate officers.  § 8-41-401(3); *see Curry*, ¶ 13 (citing *Pulsifer*, 161 P.3d at 659).  These individuals can't bring an action under the WCA for compensation for work-related injuries because they are excluded from the definition of "employee" under section 8-40-202(2), C.R.S. 2025; instead,

these individuals are authorized by section 8-41-203, C.R.S. 2025, to bring a common law cause of action to recover damages for work-related injuries. § 8-41-401(3); *see also Kelly v. Mile Hi Single Ply, Inc.*, 890 P.2d 1161, 1162 (Colo. 1995) (noting that the corporate officer who rejected WCI wasn't considered an employee under the WCA).

¶ 13    Section 8-41-202 allows a corporate officer[3] to execute and file an election rejecting WCI with the Division of Workers' Compensation that remains in effect until revoked. § 8-41-202(1)-(2). A corporate officer who elects to reject WCI may bring a common law cause of action to recover compensation for work-related injuries, but any recovery is subject to the statutory damages cap. *See* § 8-41-401(3).

¶ 14    The purpose of the statutory damages cap is for businesses to know their potential liability and plan accordingly. *See Kelly*, 890 P.2d at 1164-65. And the General Assembly didn't intend for an individual who opts out of WCI coverage to "have the best of both

---

[3] Section 8-41-202(4)(a), C.R.S. 2025, defines "[c]orporate officer" as "an owner of at least ten percent of the stock of the corporation and who controls, supervises, or manages the business affairs of the corporation."

worlds" — that is, "an individual [who] reject[s] coverage to save money on the premiums cannot then come back and sue the employer under the common law for work related injuries." *Id.* at 1164 (quoting Hearing on H.B. 1215 before the H. Bus. Comm., 56th Gen. Assemb., 1st Reg. Sess. (Apr. 9, 1987) (statement of Rep. Mary Anne Tebedo, Bill Sponsor)); *see also Pulsifer*, 161 P.3d at 660 (analyzing the legislative history of the statutory damages cap).

¶ 15    However, the statutory damages cap isn't applicable "in any cause of action brought against another not in the same employ" (the exception).  § 8-41-401(3).  In *Pulsifer*, the supreme court examined the meaning of the phrase "another not in the same employ."  The supreme court concluded that whether the exception applies depends "on whether services are being directly performed for another, and not on whether one of the parties meets the statutory definition of 'employee' or even the definition of 'employer.'" *Pulsifer*, 161 P.3d at 662.

¶ 16    The supreme court also concluded that the term "another not in the same employ" means a third party who is not a "principal party" to the agreement for services for pay.  *Id.* at 661-62.  Thus, "if the parties to the suit are the princip[al] parties to the

7

agreement, the limitation on damages applies." *Id.* at 662. Conversely, "an injured plaintiff is entitled to sue a defendant who is not a direct party to the agreement for services for pay and is not subject to the statutory limitation on damages." *Id.*

### B. Corporations and Agency

¶ 17    "[A] duly formed corporation is treated as a separate legal entity, unique from its officers, directors, and shareholders," which "isolates the actions . . . of the corporation from the individuals who . . . run the entity." *In re Phillips*, 139 P.3d 639, 643 (Colo. 2006); *see also Mortg. Inv. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1182 (Colo. 2003) ("A corporation is a separate entity distinct from its officers."). Under section 7-103-102(1), C.R.S. 2025, every corporation generally has the same powers as an individual to carry out its business. Among the general powers of a corporation is the ability to make contracts. § 7-103-102(1)(g).

¶ 18    When a corporation contracts, it does so through the action of its agent. *See Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 41 (Colo. 1997) ("Corporations act through agents: 'It is familiar law that a corporation can only act through its agents, and their acts within the scope of their authority are the acts of the corporation.'"

8

(quoting *Orphan Belle Mining & Milling Co. v. Pinto Mining Co.*, 85 P. 323, 325 (Colo. 1906))); *see also Mortg. Inv. Corp.*, 70 P.3d at 1182 ("Whether or not an individual has the authority to act on behalf of the corporation[] as an officer . . . is a question of authority governed by principles of agency law.").

¶ 19    If an agent for a corporation contracts on behalf of the corporation and the contract sufficiently identifies the corporation as the principal, then the corporation is a disclosed principal and a party to the contract. *See* Restatement (Third) of Agency § 6.01 (A.L.I. 2006). The corporation's agent isn't a party to the contract *unless* the agent and third party agree otherwise. *Id.*

### C.    C.R.C.P. 56(h)

¶ 20    C.R.C.P. 56(h) governs a court's ruling on a question of law; it provides that the district court may enter an order deciding the question "[i]f there is no genuine issue of any material fact necessary for the determination." "The purpose of Rule 56(h) is 'to allow the court to address issues of law which are not dispositive of a claim (thus warranting summary judgment) but which nonetheless will have a significant impact upon the manner in which the litigation proceeds.'" *Stapleton v. Pub. Emps. Ret. Ass'n,*

9

2013 COA 116, ¶ 19 (quoting *Bd. of Cnty. Comm'rs v. United States*, 891 P.2d 952, 963 n.14 (Colo. 1995)).

## D. Standard of Review

¶ 21 "Statutory interpretation is a question of law that we review de novo." *Curry*, ¶ 11. However, when the supreme court has previously determined the legislature's intent and defined a statutory term, we are bound to apply that definition. *See Pella Windows & Doors, Inc. v. Indus. Claim Appeals Off.*, 2020 COA 9, ¶ 37. We also review de novo a district court's ruling on a question of law under Rule 56(h). *Coffman v. Williamson*, 2015 CO 35, ¶ 12. In doing so, we apply the same summary judgment standard as the district court, which means we give the nonmoving party all favorable inferences that can fairly be drawn from the undisputed facts. *Id.*

## III. Analysis

¶ 22 The parties' only dispute is whether the statutory damages cap applies to Ramirez's claim against KLM.

¶ 23 KLM argues that the statutory damages cap applies to Ramirez's claim because the accident would otherwise have been compensable under the WCA if Ramirez hadn't elected to reject

WCI. KLM argues that the agreement for services for pay was the plumbing subcontract for the project and that the principal parties were KLM, All City, and Ramirez. Ramirez disagrees, arguing that he and All City were the principal parties to the agreement for plumbing services for pay, so KLM is a third party to that agreement.

¶ 24 To resolve this appeal, we must first identify the applicable agreement for services for pay. Then, applying the supreme court's definition of "another not in the same employ" as set forth in *Pulsifer*, we identify the principal parties to that agreement.

¶ 25 We disagree with both parties regarding the principal parties to the agreement for plumbing services for pay. As discussed below, we conclude that KLM is one principal party. Our conclusion about the identification of the other principal party — Ramirez or All City — determines whether the damages cap applies. Put simply, if KLM and Ramirez were the principal parties to the applicable agreement, then the statutory damages cap applies; if KLM and All City were the principal parties to the applicable agreement, then the exception applies.

11

## A. *Pulsifer*

¶ 26    In *Pulsifer*, a general contractor hired a sole proprietor as a subcontractor to perform painting services for a construction project. 161 P.3d at 658. The subcontractor sustained severe injuries on the construction site and didn't have WCI for himself, so he brought a common law action for negligence against the general contractor. *Id.* The trial court denied the general contractor's request to limit the subcontractor's damages to $15,000. *Id.*

¶ 27    Ultimately, the supreme court concluded that the statutory damages cap of $15,000 applied to the subcontractor's recoverable damages because the subcontractor "was hired to perform painting services for [the general contractor]," so the subcontractor and general contractor were the principal parties to the agreement for painting services for pay. *Id.* at 663.

### B.    The Agreement for Plumbing Services for Pay

¶ 28    In their joint motion for entry of a stipulated judgment, the parties stipulated to certain facts, including, as relevant here, that

"KLM subcontracted[4] with All City to install underground plumbing during the construction of [the project]" and, "while performing plumbing work at [the project] under [an oral] subcontract between Defendant KLM and All City, [Ramirez] fell through a hole in the subfloor, suffering injuries and damages." Thus, based on the parties' stipulated facts, it's undisputed that the agreement for pay was for All City to perform plumbing services at the project (plumbing services agreement). We now discuss the principal parties to the plumbing services agreement.

## C. The Principal Parties to the Plumbing Services Agreement

¶ 29    KLM asserted in its response to Ramirez's motion for the determination of a question of law that Ramirez "and/or" All City entered into a subcontract with and performed plumbing services for pay for the benefit of KLM. But KLM waived its right to challenge the identity of the parties to the subcontract when it stipulated that the subcontract was between it and All City. *Dep't of Health v. Donahue,* 690 P.2d 243, 247 (Colo. 1984) (waiver is the

---

4 The parties stipulated that an oral contract existed for the installation of underground plumbing. *See Tuscany Custom Homes, LLC v. Westover,* 2020 COA 178, ¶ 52 (noting that the existence of an oral contract is a factual question).

13

intentional relinquishment of a known right or privilege and involves conduct clearly manifesting the intent not to assert the benefit); *see also Durbin v. Bonanza Corp.*, 716 P.2d 1124, 1128 (Colo. App. 1986) ("Stipulations are a form of judicial admission which are binding on the party who makes them and may constitute the basis for a judgment."). Given KLM's stipulation, we reject its argument on appeal that there were three principal parties to the plumbing services agreement — KLM, All City, and Ramirez.

¶ 30 We further reject KLM's assertion that the facts underlying Ramirez's claim are indistinguishable from those in *Pulsifer*. KLM's assertion ignores All City's status as a corporation, as compared

with the subcontractor's status as a sole proprietor in *Pulsifer*.[5] The distinction between the two is the crux of this appeal because a corporation is a legal entity separate and distinct from its officers, *see Mortg. Inv. Corp.*, 70 P.3d at 1182, while a sole proprietorship "is owned and managed by one person[] and thereby exists as an extension of . . . that person," *Allstate Ins. Co. v. Willison*, 885 P.2d 342, 344 (Colo. App. 1994) (quoting John E. Moye, *The Law of Business Organizations* § 1.01 (2d ed. 1982)).

---

[5] KLM relies on *Snook v. Joyce Homes, Inc.*, 215 P.3d 1210 (Colo. App. 2009), in support of its argument that the statutory damages cap applies to Ramirez's claim. We reject its argument because its reliance on *Snook* is susceptible of the same distinction that *Pulsifer* is — *Snook* involved a sole proprietor. Unlike a corporation, a sole proprietorship isn't a legal entity separate from its business owner. *See Allstate Ins. Co. v. Willison*, 885 P.2d 342, 344 (Colo. App. 1994). And while we agree with KLM that *Curry v. Brewer*, 2025 COA 28, reaffirms *Pulsifer*'s holding that "another not in the same employ" refers to a third party who is not a principal party to the agreement for services for pay, 161 P.3d 656, 661-62 (Colo. 2007), we disagree with KLM that *Curry* compels the conclusion that KLM asserts — that the statutory damages cap applies because Ramirez and KLM were the principal parties to the agreement for plumbing services for pay. In *Curry*, ¶ 2, the subject independent contractors were individuals who each worked for the same company. Because those individuals worked *with* each other but not *for* each other, the division concluded that the statutory damages cap didn't apply. *Id.* Unlike the plaintiff in *Curry*, Ramirez is the sole owner, officer, and employee of All City, the corporation that contracted with KLM to perform the plumbing work. Thus, the facts in *Curry* are materially distinguishable from the facts in this case.

¶ 31     Although Ramirez participated in forming the plumbing services agreement as All City's corporate officer, his participation was limited to acting as an agent of the corporation.  And the record doesn't demonstrate that Ramirez or KLM agreed otherwise that he was a party to the plumbing services agreement.  *See* § 7-103-102(1)(g) (noting that corporations have the general power to contract); *Dallas Creek Water Co.*, 933 P.2d at 41 ("Corporations act through agents."); *AtriCure, Inc. v. Meng*, 12 F.4th 516, 531 (6th Cir. 2021) ("[A]gents do not become contracting parties when they sign a contract on behalf of a disclosed principal or perform duties as agents for that principal."); Restatement (Third) of Agency § 6.01. Furthermore, and as Ramirez notes in his answer brief, KLM hasn't argued that All City's corporate form should be disregarded by piercing the corporate veil, despite KLM apparently recognizing this might be an issue, as it indicated in one of its court filings.

¶ 32     Accordingly, we conclude that the principal parties to the plumbing services agreement are KLM and All City.  And because Ramirez isn't a principal party to the plumbing services agreement, KLM is a third party to Ramirez.  Thus, KLM is "another not in the

16

same employ" as Ramirez, and Ramirez's recoverable damages against KLM aren't subject to the statutory damages cap.

### D. KLM's Public Policy Argument

¶ 33    KLM argues that allowing Ramirez the benefit of the exception would contravene the General Assembly's intent to limit recoverable damages to $15,000 for individuals who reject WCI coverage.  KLM also argues that if we apply the exception to Ramirez's claims, we will create a loophole that incentivizes small construction businesses in Colorado to form corporate entities to avoid the cost of WCI coverage while at the same time maintaining their ability to pursue uncapped tort damages against general contractors.  KLM further argues that the results of our decision would be "civilly catastrophic" for Colorado's construction industry.  We aren't persuaded.

¶ 34    We acknowledge that the General Assembly preferred to avoid allowing an individual who opts out of the WCA to have "the best of both worlds."  *Kelly*, 890 P.2d at 1164 (quoting Hearing on H.B. 1215 before the H. Bus. Comm., 56th Gen. Assemb., 1st Reg. Sess. (Apr. 9, 1987) (statement of Rep. Mary Anne Tebedo, Bill Sponsor)).  We also recognize that, in *Pulsifer*, the supreme court noted that

17

the General Assembly specifically subjected persons "excluded from the definition of employee" to the statutory limitation on damages in [section 8-41-401(3)]. It would make little sense for the General Assembly to then except the same group from the damages limitation in the very same section of the statute, thus rendering their initial inclusion meaningless.

161 P.3d at 662.

¶ 35     But we must presume that, when it enacted the statutory damages cap, the General Assembly was aware of the distinct legal status of corporate entities and the ability of corporate officers to enter into contracts as agents on behalf of their corporations without themselves becoming parties to the contract. *See id.*; *Jordan v. Safeco Ins. Co. of Am.*, 2013 COA 47, ¶ 28 ("We presume that the General Assembly has knowledge of existing statutes and relevant judicial decisions when it enacts legislation.").

¶ 36     KLM's "loophole" argument thus ignores that businesses in Colorado were already able to incorporate when the General Assembly enacted the portion of the statutory damages cap applicable to corporate officers. *Compare Cowell v. Colo. Springs Co.*, 3 Colo. 82, 88 (1876) (noting that the recognition of corporations in Colorado dates back to Colorado's territorial

18

statutes in 1867), *aff'd*, 100 U.S. 55 (1879), *and Bowers Bldg. Co. v. Altura Glass Co.*, 694 P.2d 876, 877 (Colo. App. 1984) (noting that the General Assembly adopted a new corporation code in 1958), *with* Ch. 53, sec. 1, § 8-48-101(2.5), 1987 Colo. Sess. Laws 399 (the General Assembly amended the WCA and created what is now the statutory damages cap).  Indeed, as the supreme court recognized in *Kelly*, the General Assembly amended the statutory damages cap in 1987 to make that section and its limitation on recoverable damages applicable "to officer-owners who . . . reject compensation coverage."  890 P.2d at 1164.

¶ 37     But *Pulsifer* — and its interpretation of the phrase "another not in the same employ" — was decided after the 1987 amendment to the statutory damages cap.  And *Pulsifer* makes clear that the controlling consideration for purposes of determining whether the exception applies to allow an individual who rejected WCI coverage to pursue uncapped damages for a work-related injury is whether the injured plaintiff and the defendant were principal parties to the agreement for services for pay.  161 P.3d at 662.  To the extent that the General Assembly didn't intend this outcome in circumstances such as those presented here — the election by the corporate officer

19

of a single-member corporation to waive WCI coverage — it may amend the statutory damages cap if it disagrees with our application of the exception. *See, e.g., Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 451 (Colo. 2005) (noting certain amendments to section 8-41-401 were in direct response to appellate court precedent).

## IV.  Disposition

¶ 38    The judgment is affirmed.

JUDGE TAUBMAN concurs.

JUDGE TOW specially concurs.

JUDGE TOW, specially concurring.

¶ 39     I agree with my colleagues that the supreme court's decision in *Pulsifer v. Pueblo Professional Contractors, Inc.*, 161 P.3d 656 (Colo. 2007), requires that we affirm the district court's judgment. Specifically, the supreme court addressed section 8-41-401(3), C.R.S. 2025, which provides that the $15,000 cap on damages for actions filed by an owner-officer who has opted out of workers' compensation coverage does not apply to actions against "another not in the same employ." The court held that "another not in the same employ" is someone who is "not a direct party to the agreement for services for pay." *Pulsifer*, 161 P.3d at 662. And because plaintiff, Juan M. Ramirez, Jr., was not a direct party to the agreement between his company and defendant, KLM Construction, Inc., the cap does not apply to his action against KLM.

¶ 40     I write separately because, notwithstanding the unequivocal — albeit broad — language of *Pulsifer*, I doubt that the supreme court intended that case to reach the facts of this case.

¶ 41     In *Pulsifer*, the plaintiff was a painter hired by a general contractor to work as a subcontractor on a construction project. *Id.*

21

at 658.  Pulsifer had opted out of providing workers' compensation insurance for himself.  *Id.*  When he was hurt while working on the project, he sued the general contractor.  *Id.*  The supreme court ruled that his damages were limited by the statutory cap because he and the general contractor were the principal parties to the agreement for services for pay.  *Id.* at 662.

¶ 42    The supreme court noted,

> The workers' compensation scheme was intended, in part, to create predictable expenses for employers in light of the planning difficulties that accompany common law tort liability.  The statutory limit permits employers to predict their costs when faced with a claim from an individual hired to perform a service who is not covered by the [Workers' Compensation Act]. . . .  The General Assembly has shifted the risk of work-related injuries costing more than fifteen thousand dollars to individuals who have the choice to participate in the workers' compensation system.

*Id.* at 663 (citing *Kelly v. Mile Hi Single Ply, Inc.*, 890 P.2d 1161, 1163-65 (Colo. 1995)).

¶ 43    The court also cited *Kelly* in support of its holding that "if the parties to the suit are the princip[al] parties to the agreement, the limitation on damages applies."  *Id.* at 662.  Interestingly, in doing so, the *Pulsifer* court used a *cf.* signal, explaining that *Kelly*

"appl[ied] the damage limitation to a rejecting officer." *Id.* In legal writing, an authority following a "*cf.*" signal "supports a proposition different from the main proposition but sufficiently analogous to lend support. Literally, '*cf.*' means 'compare.'" *The Bluebook: A Uniform System of Citation* R. 1.2(a) (Columbia L. Rev. Ass'n et al. eds., 22d ed. 2025). In other words, the court cited *Kelly* as analogous support for the proposition that the limitation on damages only applied to the principal parties to the agreement.

¶ 44     In *Kelly*, the plaintiff — the president and sole shareholder of his company — had opted out of workers' compensation coverage for himself. 890 P.2d at 1162. He was severely injured in a car accident while he and a co-employee, who was driving the car, were returning from a business trip. *Id.* The plaintiff sued his co-employee and his employer (his own company). *Id.* The supreme court held that because the plaintiff had opted to reject coverage, he was barred from suing his co-employee and any action against his employer would be subject to the statutory damages cap. *Id.* at 1165-67.

¶ 45     Like the plaintiff in *Kelly*, Ramirez is an owner/officer who opted out of obtaining workers' compensation coverage for himself.

And, like the plaintiff in *Pulsifer*, Ramirez was performing work on a construction site for a general contractor.

¶ 46     But Ramirez is in a significantly different posture than those other plaintiffs.  Unlike the plaintiff in *Kelly*, Ramirez is not suing his own employer.  And unlike the plaintiff in *Pulsifer*, Ramirez is not a sole proprietor but, rather, works for an incorporated business entity.  Thus, while the plaintiffs in *Kelly* and *Pulsifer* were direct parties to the agreements for services for pay in their cases, the parties to the agreement here were KLM and Ramirez's employer, not Ramirez himself.

¶ 47     For the most part, the General Assembly carefully crafted a scheme to give owner/officers of companies the option of saving on workers' compensation coverage expenses in exchange for bearing the burden of the costs of any future accidents.  But — as the majority notes — that scheme, as laid out in section 8-41-401(3), does not make any exception for the generally applicable rules regarding corporate structure.  Notably, the General Assembly is aware of how to do so, such as when it excluded from a general contractor's obligation to provide workers' compensation insurance the requirement to insure "[a]n independent contractor, who is a

natural person, who has formed a corporation . . . or a limited liability company . . . and who has rejected workers' compensation coverage." § 8-41-404(4)(a)(III), C.R.S. 2025. But it did not make the same accommodation in section 8-41-401.

¶ 48 And the supreme court, similarly, made no accommodation for such structure when it held that the General Assembly intended the phrase "another not in the same employ" to mean only the principal parties to the agreement for services for pay. While the supreme court may not have anticipated the holding in *Pulsifer* applying to an individual who has incorporated, nothing in the court's holding gives us the flexibility to decline to give it effect here.

¶ 49 It is axiomatic that we must "follow the supreme court where it has determined the legislature's intent." *Pella Windows & Doors, Inc. v. Indus. Claim Appeals Off.*, 2020 COA 9, ¶ 37. Because doing so here compels us to affirm, I concur.