The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 16, 2020

**2020COA9**

**No. 18CA1908, *Pella Windows v. ICAO* — Labor and Industry — Workers' Compensation — Independent Contractors**

A division of the court of appeals considers whether the independent contractor analysis adopted by the Colorado Supreme Court in *Industrial Claim Appeals Office v. Softrock Geological Services, Inc.*, 2014 CO 30, an unemployment case, also applies in the workers' compensation context and must be considered when determining whether an injured worker is an independent contractor for purposes of the Workers' Compensation Act. The division concludes that the *Softrock* analysis applies.

The division further concludes that once an administrative law judge has weighed the statutory and *Softrock* factors, the administrative law judge's findings and determinations regarding

independent contractor status cannot be set aside if substantial evidence supports them.

COLORADO COURT OF APPEALS      **2020COA9**

Court of Appeals No. 18CA1908
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-950-181

Pella Windows & Doors, Inc.; and Pinnacol Assurance,

Petitioners,

v.

Industrial Claim Appeals Office of the State of Colorado and Christopher Pierce,

Respondents.

ORDERS SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE RICHMAN
Dailey and Brown, JJ., concur

Announced January 16, 2020

Harvey D. Flewelling, Denver, Colorado, for Petitioners

No Appearance for Respondent Industrial Claim Appeals Office

Burg Simpson Eldredge Hersh & Jardine, P.C., John M. Connell, Brian Matise, Nelson Boyle, Englewood, Colorado, for Respondent Christopher Pierce

¶ 1     In this case, we consider whether the independent contractor test adopted by the Colorado Supreme Court in *Industrial Claim Appeals Office v. Softrock Geological Services, Inc.*, 2014 CO 30, an unemployment case, applies to workers' compensation actions. We determine that the *Softrock* standard applies but conclude that the Industrial Claim Appeals Office (Panel) exceeded its authority by disregarding the findings of fact made by the administrative law judge (ALJ). We therefore set aside the Panel's orders and remand with directions to reinstate the full findings of fact, conclusions of law, and order issued by the ALJ on November 25, 2015.

## I. Background Facts

¶ 2     Claimant, Christopher Pierce, began employment as a service technician for employer, Pella Windows & Doors, Inc., in June 2008. In March 2009, Pella laid off its entire team of seventeen service technicians. Immediately thereafter, claimant was one of nine service technicians offered a "service contract" with Pella, which he accepted. Pella signed a contract with claimant called the Master Service Subcontract Agreement.

¶ 3     Under the terms of the service contract, claimant was no longer Pella's employee but was described as an independent

1

contractor.  Pella could hire claimant to perform service work for its customers, but the written contract did not prohibit or prevent claimant from performing work for individuals or entities other than Pella.  Claimant conceded that, if he so chose, he could advertise his business and accept other work.

¶ 4     Claimant testified that his daily work remained largely unchanged.  However, he took several steps, many at Pella's behest, separating him from Pella's employ, including but not limited to the following:

- Claimant formed his own business and registered his business name, CP Window Service (CP), with the Colorado Secretary of State in March 2009.

- Claimant renewed the CP trade name with the Secretary of State's Office in 2010, 2011, 2012, and 2013.

- Claimant could work any day he wished.  If he wanted to take a day off, he simply so advised Pella one week in advance.

- Pella issued payment checks to CP — not to claimant — for work performed by the job, rather than by the hour, regardless of how long it took to complete the work.

2

- Pella did not withhold taxes from the checks it wrote to CP; claimant was responsible for paying any taxes he or CP incurred.

- Claimant obtained and paid for his own liability insurance.

- Claimant also lost his health insurance when Pella "made the switch over."

- Claimant's business operations as CP were never combined in any way with Pella's business operations.

¶ 5    Claimant was likewise required to obtain his own workers' compensation insurance, but when he established CP in March 2009, he filed a form with the Department of Labor expressly rejecting such insurance.  Four months later, he filed a second rejection of workers' compensation coverage.

¶ 6    By contrast, other factors evidenced claimant's dependence on Pella's business:

- CP Window Service had no employees other than claimant.

- Customers paid Pella for the service work, not CP.

- Although the written contract permitted him to work for others, in practice claimant never worked for any individual or entity other than Pella "from 2009 until 2012."

- Claimant testified that Pella work kept him busy full time, leaving him no time or opportunity to accept other work.

- He had no customers other than Pella.

- Claimant did not advertise CP.

- Claimant had no business cards for CP. He testified that Pella provided him with "blank" cards bearing Pella's phone and fax numbers, on which he could handwrite in his or CP's name.

¶ 7   On December 11, 2013, claimant was repairing a window pursuant to a Pella assignment when he fell from a second-floor window. The fall resulted in a compression fracture of claimant's spine at L1. Claimant now suffers from paraplegia. He told the hospital during his initial stay that he was "self employed and a contract employee for [the] job he was on, so there is NO worker[s'] comp[ensation] possibility." He also indicated on other related

4

medical forms, in conversations with doctors, and on a social security disability benefits application that he was self-employed and had been working as an independent contractor. Nonetheless, several months after sustaining his injury, claimant filed a claim for workers' compensation coverage, which Pella and its insurer, Pinnacol Assurance, contested on the ground that claimant was an independent contractor at the time of his injury.

## II. Procedural History

¶ 8    The parties litigated the issue. The resulting case has had a lengthy procedural history. It went to a hearing in September 2014 conducted by ALJ Michelle Jones. In analyzing the evidence presented, ALJ Jones applied the independent contractor tests set forth in the Workers' Compensation Act (WCA), section 8-40-202(2)(b), C.R.S. 2019. That statutory section enumerates nine criteria which establish an independent contractor's independence from a prospective employer. It also mandates that, if the worker and the putative employer enter into a written contract, the document "shall create a rebuttable presumption of an independent contractor relationship between the parties." § 8-40-202(2)(b)(IV).

¶ 9    ALJ Jones found that the nine factors all weighed in Pella's favor, tipping the scales toward a finding that claimant was an independent contractor rather than an employee.  For example, she explained that, although claimant had no employees and performed work for no one other than Pella, the "issue is whether or not claimant was *required* to work exclusively for the employer."  She concluded claimant was not required to work exclusively for Pella.  She noted that there was conflicting testimony about whether claimant's work was inspected by Pella, but concluded that the evidence did not establish that Pella oversaw claimant's work or instructed claimant on how to perform the work.  Likewise, although ALJ Jones credited claimant's testimony that "he was provided with materials and equipment necessary for his repair work . . . includ[ing] . . . scaffolding, ladders, suction cups, and glass cutters," she found that "the evidence establishes that the actual tools used were" claimant's.  She also found that Pella provided claimant with no more than "minimal training" and no longer provided him with tools to perform the service work, although he did obtain some materials from Pella to perform the work.  She determined that the written contract between the parties

created a rebuttable presumption that claimant was an independent contractor, which he failed to overcome. Based on her analysis of all nine factors, she concluded claimant was an independent contractor.

¶ 10    But, in May 2015, the Panel set aside ALJ's Jones' order, concluding that she had failed to follow the test adopted by the supreme court in *Softrock*. Although the WCA specifies that the determination "whether an individual is an employee" or an independent contractor for workers' compensation purposes "shall be based on the nine criteria found in section 8-40-202(2)(b)(II)," the Panel concluded that *Softrock* applied because the nine factors in the WCA are identical to the nine factors listed in the Colorado Employment Security Act (CESA), section 8-70-115(1)(c), C.R.S. 2019. Because *Softrock* had expanded the analysis beyond the nine factors identified in the CESA, the Panel reasoned the same expansion applied to the WCA.

¶ 11    Under *Softrock,* the Panel observed, the fact finder charged with determining whether an individual was an employee or independent contractor "was directed to conduct 'an inquiry into the nature of the working relationship'" and must consider "any

7

other relevant factors" in reaching a decision. The Panel then listed

several factors identified in *Long View Systems Corp. USA v.*

*Industrial Claim Appeals Office*, 197 P.3d 295 (Colo. App. 2008),

another unemployment compensation case, which *Softrock* had

approvingly cited. *Softrock* suggested that the *Long View* factors

should be considered as follows:

> when evaluating a claim that the putative
> employee maintained an independent trade or
> business, the Division and the ICAO could
> consider whether the putative employee:
> maintained an independent business card,
> listing, address, or telephone; had a financial
> investment such that there was a risk of
> suffering a loss on the project; used his or her
> own equipment on the project; set the price for
> performing the project; employed others to
> complete the project; and carried liability
> insurance.

*Softrock*, ¶ 16. Based on this language, the Panel ruled that the

"paucity of evidence in the record pertinent to many of the factors

mentioned by the *Softrock* decision" required it to set aside ALJ

Jones' order and "remand the matter for additional evidentiary

proceedings."

¶ 12    On remand a few months later, ALJ Jones conducted a second

hearing and admitted additional evidence. She again weighed the

8

nine criteria set out in section 8-40-202(2)(b)(II), but also considered the *Long View/Softrock* factors. ALJ Jones noted that claimant had a business name, used tools he purchased, lost his benefits, obtained his own liability insurance, and was free to accept or reject Pella's projects.

¶ 13 She expressly found that claimant had failed to show "that he was not free from control and direction in the performance of his services" and failed to show that "he was not customarily engaged in an independent trade or business." To support these findings, she found that Pella was not aware that claimant was working exclusively for it. She also found again that Pella no longer provided claimant with tools, although she found that it did provide him with materials necessary for jobs he accepted. But she pointed out that the sixth factor of the nine factor test addresses provision of tools and benefits, not the provision of materials.

¶ 14     She therefore concluded that "the nature of the working relationship in this case shows that it was an independent contractor/employer relationship."[1]

¶ 15     In an order issued April 26, 2016, the Panel rejected ALJ Jones' reasoning a second time. The Panel reiterated its determination that *Softrock* applies to workers' compensation cases, noting that

> [t]he intent of the sponsors [of the legislation] was to have both [section] 8-70-115 and [section] 8-40-202(2)(b)(II) construed in a similar fashion, but only to the extent a court was applying the nine factors. The *Softrock* decision in 2014 was interpreting the nine factors included in [section] 8-70-115, which also appear in [section] 8-40-202(2)(b)(II). Applying that decision to the application of either statute cannot be seen as contrary to the intent of the General Assembly.

The Panel then went on to conclude that ALJ Jones' conclusions of law were "unsupported by substantial evidence in the record." The Panel chastised ALJ Jones for "[p]ermitting the label rather than the actual nature of the relationship to control" and criticized her

---

[1] The ALJ did not address whether claimant "had a financial investment such that there was a risk of suffering a loss on the project," but neither did the Panel in its review.

reliance on "the documents executed by the parties in March, 2009[,]" as indicative of claimant's "independent business . . . [despite] the absence of evidence in the record that claimant ever took any steps to "create an independent business.  The Panel reasoned that Pella's motivation for entering into a contractual relationship with claimant and the other service technicians "was to save money on payroll expenses."  It further observed that, under the parties' agreement, "claimant simply performed the same job he had prior to 2009, but was paid in a different manner."  It deemed claimant's injury compensable.  Because the parties had stipulated to claimant's average weekly wage, claimant's award was calculable.

¶ 16    Pella subsequently appealed the Panel's decision to this court. However, because the Panel's order had not reduced claimant's award to a sum certain, the appeal was dismissed without prejudice.  *Pella Windows & Doors, Inc. v. Indus. Claim Appeals Office*, (Colo. App. No. 16CA0845, Mar. 2, 2017) (not selected for publication pursuant to C.A.R. 35(e)).

¶ 17    In the second remand, ALJ Kara Cayce entered a brief order dated February 2, 2018, approving the parties' stipulation; awarding claimant $800 per week in temporary total disability (TTD)

11

benefits from December 12, 2013, through May 31, 2014; deducting $186.23 from the TTD award after June 1, 2014, as an offset against the social security disability benefit claimant began receiving that month; and ordering Pella to pay claimant TTD benefits of $613.77 per week thereafter and continuing. However, ALJ Cayce crossed out language on the order notifying the parties of their right to seek review.

¶ 18    Nevertheless, Pella sought the Panel's review of this order. The Panel issued its final order on September 24, 2018. Because ALJ Cayce had stricken language in the order advising the parties of their appeal rights, one member of the Panel characterized the order as a summary order necessitating a request for full findings within ten days of the order before further appellate review could be taken. *See* § 8-43-215, C.R.S. 2019.[2] Pella had not sought review within the statutory ten-day period. Consequently, one of the two Panel members reviewing the matter concluded that ALJ Cayce's order

---

[2] Section 8-43-215, C.R.S. 2019, mandates that any party seeking review of a summary order must "make a written request for a full order within ten working days after the date of mailing of the summary order. The request is a prerequisite to review under section 8-43-301[, C.R.S. 2019]."

was final and unappealable. The other Panel member disagreed with that characterization and conclusion. But, because she concurred with the rest of the decision and with the conclusion that ALJ Cayce's order should be affirmed, the Panel member's disagreement did not change the outcome of the decision. Instead, the Panel again reiterated its belief that *Softrock* applied and that the evidence supported a finding that claimant was an employee whose on-the-job injury was compensable.

¶ 19 All three of the Panel's decisions are now before us for review. Pella asks us to consider whether the Panel erred by concluding that *Softrock* applies to workers' compensation actions. It also challenges the Panel's characterization of ALJ Cayce's order as a summary order. And, finally, Pella argues that the Panel overstepped its authority by rejecting ALJ Jones' finding that claimant was an independent contractor.

### III. Finality of ALJ Cayce's Order

¶ 20 We first address the Panel's determination that ALJ Cayce's order reducing claimant's award to a sum certain was a summary order. In that order, issued after Pella's first appeal to this court was dismissed without prejudice, ALJ Cayce stated that she was

13

"reversing this ALJ's prior order of November 30, 2015, . . . pursuant to the stipulation of the parties and in order to create a final and appealable order" and awarded claimant specific TTD benefits. Nowhere was the order identified as a summary order. Nothing in the order stated that Pella's time to seek review was limited to ten days. Pella, therefore, had no reason to believe it had to act within ten days to preserve its appellate rights.

¶ 21    But parties are entitled to "notice of a critical determination in a proceeding." *Patterson v. Indus. Comm'n,* 39 Colo. App. 255, 257, 567 P.2d 385, 387 (1977). Notice that an order is characterized as a summary order requiring a request for full findings within ten days is a "critical determination" pertinent to the order. "[W]here the parties, whether employee or employer, are represented in the administrative proceeding under consideration by attorneys of record, notice of decisions affecting the substantial rights of the parties must be given to their attorneys." *Mountain States Tel. & Tel. Co. v. Dep't of Labor & Emp't,* 184 Colo. 334, 338, 520 P.2d 586, 588 (1974).

¶ 22    Here, the failure to advise Pella and its counsel that the order may be considered a summary order subjecting Pella to a ten-day

14

window within which to request full findings violated Pella's right to due process under the law. *See Hall v. Home Furniture Co.*, 724 P.2d 94, 96 (Colo. App. 1986) ("Due process is violated when an attorney of record, through no fault of his own, is denied notice of a critical determination in his client's case and by reason thereof fails to take the procedural steps necessary to preserve his client's rights.").

¶ 23 Accordingly, the determination of Panel member Kroll characterizing ALJ Cayce's order as a final, unappealable summary order improperly deprived Pella of its guaranteed rights to due process. We therefore set aside that portion of the Panel's September 24, 2018, decision and proceed with our review of the merits of ALJ Cayce's decision as well as ALJ Jones' two decisions and the Panel's three decisions in this case.

IV. Applicability of *Softrock* to Workers' Compensation Actions

¶ 24 Pella contends that the Panel erred by applying the supreme court's *Softrock* decision to this workers' compensation action. It argues that *Softrock* was limited to unemployment cases and that applying it in the workers' compensation context violates the

General Assembly's express intent.  We are not persuaded that the Panel erred.

¶ 25     Prior to *Softrock*'s announcement, independent contractor determinations in unemployment cases often turned on a single question: whether the worker performed services exclusively or predominantly for one employer.  If that question was answered in the affirmative, the worker was generally found to be an employee rather than an independent contractor.  *See, e.g., Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Office*, 859 P.2d 278, 282 (Colo. App. 1993) (holding that because most of the employer's workers "were . . . not customarily engaged in the business independent of their relationship with the company . . . they were not engaged in an independent business and were, therefore, in covered employment"), *abrogated by Softrock*, ¶ 18.

¶ 26     *Softrock* rejected the use of the dispositive factor test exemplified by *Carpet Exchange*.  Instead, the supreme court held that nine factors enumerated in section 8-70-115 of CESA — which are identical to the nine criteria set out in section 8-40-202(2)(b)(II) of the WCA — are "indicative of what the General Assembly thought are important distinctions between employees and independent

contractors. As such, we conclude that they should be considered when determining whether an individual is engaged in an independent business for the purposes of unemployment insurance tax liability." *Softrock*, ¶ 15. The nine factors listed in the WCA, and repeated in the CESA, are as follows:

> (II) To prove independence it must be shown that the person for whom services are performed does not:
>
> (A) Require the individual to work exclusively for the person for whom services are performed; except that the individual may choose to work exclusively for such person for a finite period of time specified in the document;
>
> (B) Establish a quality standard for the individual; except that the person may provide plans and specifications regarding the work but cannot oversee the actual work or instruct the individual as to how the work will be performed;
>
> (C) Pay a salary or at an hourly rate instead of at a fixed or contract rate;
>
> (D) Terminate the work of the service provider during the contract period unless such service provider violates the terms of the contract or fails to produce a result that meets the specifications of the contract;
>
> (E) Provide more than minimal training for the individual;

(F) Provide tools or benefits to the individual; except that materials and equipment may be supplied;

(G) Dictate the time of performance; except that a completion schedule and a range of negotiated and mutually agreeable work hours may be established;

(H) Pay the service provider personally instead of making checks payable to the trade or business name of such service provider; and

(I) Combine the business operations of the person for whom service is provided in any way with the business operations of the service provider instead of maintaining all such operations separately and distinctly.

§ 8-40-202(2)(b)(II).

¶ 27　　But the supreme court held that the independent contractor analysis need not be limited to these nine statutory criteria.  Citing the other factors considered in *Long View* — such as the worker's use of business cards, financial risk, setting the price for jobs, employing others, and carrying liability insurance, *Softrock*, ¶ 16 — the supreme court stated that,

> [g]iven the wide array of factors that could be relevant, we conclude that rather than requiring a rigid check-box type inspection, a more accurate test to determine if an individual is customarily engaged in an independent business involves an inquiry into the nature of the working relationship.  The

18

> [Panel] and the Division may consider the nine factors in section 8-70-115(1)(c) as well as any other information relevant to the nature of the work and the relationship between the employer and the individual. Accordingly, we decline to adopt the court of appeals' test that exclusively considers only the nine factors enumerated in section 8-70-115(1)(c).

*Id.* at ¶ 17. *Softrock* thus expanded the scope of independent contractor review in the unemployment arena.

¶ 28 As Pella points out, *Softrock* stated that the issue before it was "whether an individual is an independent contractor as opposed to an employee for unemployment tax liability purposes." *Id.* at ¶ 1. Nowhere does *Softrock* mention or discuss its applicability to workers' compensation cases.

¶ 29 Indeed, *Softrock*'s underlying premise — that an independent contractor analysis cannot be based on a single, dispositive factor — is not of concern in the workers' compensation context. Unlike the CESA, the WCA expressly prohibits such a singular analysis: "The fact that an individual performs services exclusively or primarily for another shall not be conclusive evidence that the individual is an employee." § 8-40-102(2), C.R.S. 2019.

Consequently, the Panel analysis that was challenged in *Softrock* is not at issue in the worker's compensation arena.

¶ 30 Pella also correctly notes several dissimilarities between the CESA and the WCA which suggest that the legislature intended independent contractor analysis to be limited to the WCA's nine criteria.

¶ 31 First, the CESA applies the nine criteria to "a written document, signed by both parties." § 8-70-115(1)(c). In contrast, the WCA applies the factors to an analysis of the relationship between the parties. However, this distinction is essentially rendered moot by *Softrock*, which held them "indicative of . . . important distinctions between employees and independent contractors." *Softrock*, ¶ 15. Thus, after *Softrock*, the nine criteria are no longer limited to written documents; they can be applied to the relationship between the parties, just as they are in the WCA. *See id.*

¶ 32 Second, in 1993, the legislature expressly added language to the WCA permitting consideration of independent contractor cases that arose in the unemployment context. The statute was amended to provide as follows:

> The general assembly hereby finds that the determination of whether an individual is an employee for purposes of the "Workers' Compensation Act of Colorado" is subject to a great deal of speculation and litigation. It is the intent of the general assembly to provide an easily ascertainable standard for determining whether an individual is an employee. In order to further this objective, the test for determining whether an individual is an employee for the purposes of the "Workers' Compensation Act of Colorado" is based on the criteria found in section 8-70-115. It is the intent of the General Assembly that when determining whether an individual is an employee only the factors specified in section 8-40-202(2) [the nine criteria set forth above] *and any case law which has construed the provisions of section 8-70-115* are to be considered.

Ch. 103, sec. 1, § 8-40-102(2), 1993 Colo. Sess. Laws 355

(emphasis added). However, the italicized language was *removed* by

legislative amendment just two years later. The amended legislative

declaration read as follows, and still so reads today:

> The general assembly hereby finds that the determination of whether an individual is an employee for purposes of the "Workers' Compensation Act of Colorado" is subject to a great deal of speculation and litigation. It is the intent of the general assembly to provide an easily ascertainable standard for determining whether an individual is an employee. In order to further this objective, the test for determining whether an individual

21

> is an employee for the purposes of the "Workers' Compensation Act of Colorado" shall be based on the nine criteria found in section 8-40-202(2)(b)(II) which shall supersede the common law. The fact that an individual performs services exclusively or primarily for another shall not be conclusive evidence that the individual is an employee.

Ch. 112, sec. 1, § 8-40-102(2), 1995 Colo. Sess. Laws 343. The removal of the language can be interpreted as a signal from the General Assembly that hearing examiners and litigators should not look to the CESA for guidance when assessing whether a worker is an employee or an independent contractor for workers' compensation purposes.

¶ 33 Last, the legislative declaration expressly states that, in workers' compensation cases, the test for independent contractors "shall be based on the nine criteria found in section 8-40-202(2)(b)(II)." *Id.* This, too, could be interpreted as the legislature's attempt to limit the analysis to the nine factors. And, certainly, Pella so argues.

¶ 34 But we are not persuaded this legislative declaration or the differences between the CESA and WCA necessitate limiting the scope of independent contractor analysis. As the Panel suggests,

22

"based on" as used in section 8-40-102(2) does not necessarily mean "exclusively." On the contrary, the dictionary definition of "based on" is "to find a foundation or basis for" and refers to "the fundamental part of something." Merriam-Webster Dictionary, https://perma.cc/YXY6-8YZT.

¶ 35 Other courts have followed the dictionary's expansive denotation of the term "based on." *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1111 (9th Cir. 2000) (in reviewing the applicability of mortality tables, the Ninth Circuit adopted an interpretation of "based on" as referring "to a 'starting point' or a 'foundation'" in holding that mortality tables could be used as a "starting point" for calculating mortality assumptions); *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404, 405 (N.Y. 1996) (an insurance policy that excluded claims "based on assault or on battery" was held to exclude negligence claims arising out of an assault as well as intentional torts); *see also Freeman v. United States*, 564 U.S. 522, 535 (2011) (Sotomayor, J., concurring) ("To ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment.").

¶ 36 Thus, by using the term "based on," the legislature signaled that the nine factors would provide a fundamental baseline upon which to premise the independent contractor analysis. If the legislature had intended litigants to be limited exclusively to the nine statutory criteria, it could have so stated by omitting the term "based on" and instead stating simply that fact finders must analyze these nine factors when weighing whether a worker is an independent contractor. *See, e.g.*, *Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 20 ("Had the legislature intended the waivers to be mutually exclusive, it would have affirmatively expressed this intent in the plain language of the statute."); *Montez v. People*, 2012 CO 6, ¶ 20 ("Had the legislature intended that firearms be deadly weapons per se — or, equivalently, that for a firearm to be a deadly weapon its manufacturer must intend it to be used in a manner capable of producing death or serious bodily injury, and that all firearm manufacturers do so intend — the legislature could have expressed that intent in any number of ways."). Because the legislature chose to use the broader term "based on," we conclude that the legislature left room for consideration of other factors beyond the nine enumerated criteria.

¶ 37    Moreover, although our goal in statutory analysis is to give effect to the legislature's intent, *see Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004), we are also bound to follow the supreme court where it has determined the legislature's intent. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 ("[T]he court of appeals is 'bound to follow supreme court precedent.'" (quoting *People v. Gladney*, 250 P.3d 762, 768 n.3 (Colo. App. 2010))).

¶ 38    In *Softrock*, ¶ 17, the supreme court held that fact finders assessing the independence of a worker were not limited to the nine statutory criteria but could weigh additional factors.  Given that the nine factors are identical in both the CESA and the WCA, and that the factors in both circumstances are used to consider how enmeshed the worker is with the putative employer, we must apply *Softrock* to this case.

¶ 39    We therefore conclude that the Panel did not err when it determined that ALJ Jones should have considered the *Softrock* factors in weighing whether claimant's business was independent of Pella.  And, where the Panel's interpretation is reasonable and is not inconsistent with the legislative intent, we generally defer to it. *See Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo. 2006); *Support,*

25

*Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo. App. 1998).

## V. The Panel Exceeded Its Authority

¶ 40    Having determined that the Panel correctly remanded the matter to ALJ Jones for consideration of the *Softrock* factors, we turn to the Panel's 2016 post-remand order.  As noted above, in that order, the Panel reiterated its conclusion that *Softrock* applies in the workers' compensation context.  The Panel then went on, though, to hold that "the ALJ's conclusions of law [are] unsupported by substantial evidence in the record."  The Panel criticized ALJ Jones for reasoning

> that because claimant was allowed by the documents executed by the parties in March, 2009, to operate an independent business, he therefore was engaged in an independent business.  This finding is belied by the absence of evidence in the record that the claimant ever took any steps to do so.

¶ 41    The Panel continued its discussion by analyzing and categorizing the evidence.  Among its observations, the Panel noted the following:

26

- Claimant expressed no interest in being an independent contractor or getting laid off; he just wanted to keep working.

- Claimant did not shop for his van. "He received the van from the respondent."

- He did not finance the van, but instead paid Pella for it.

- He did not have a business card.

- Pella dictated the price of each job.

- Claimant only set up his business and registered his business name after Pella laid him off.

- Claimant used his personal cell phone for business purposes.

- Pella scheduled customers' jobs.

¶ 42    While all these facts may be true, the Panel's analysis ignored other facts found by ALJ Jones. For example, ALJ Jones found that

- Claimant obtained his own liability insurance.

- He knew he could work for others if time permitted.

- He received only minimal training from Pella.

- He could rearrange his schedule.

27

- He was paid through CP and issued invoices to Pella through CP.

- He paid for his own phone.

- He received no benefits from Pella.

- Pella encouraged service technicians to seek other work and did not know that claimant worked exclusively for it.

- Claimant himself told hospital staff, doctors, and the social security administration that he was an independent contractor, suggesting that he did not believe he was Pella's employee at the time of his injury.

The Panel did not address any of these findings.

¶ 43    Likewise, the Panel disregarded ALJ Jones' credibility determinations.  Notably, ALJ Jones referred to claimant's testimony that, after signing the service contract with Pella, he was unable "to reject some jobs and accept others."  But, she noted, Brian McHugh, an employee of Pella, directly contradicted claimant's assertion.  ALJ Jones expressly found Mr. McHugh's testimony credible and persuasive.  Conversely, she described "the testimony of [c]laimant, overall, is not found as credible or persuasive."

¶ 44    When reviewing an ALJ's decision, the Panel must adhere to

the authority granted it by statute.  The Panel may only "correct, set

aside, or remand" an ALJ's order on the grounds that

> the findings of fact are not supported by the
> evidence; that the findings of fact do not
> support the order; or that the award or denial
> of benefits is not supported by applicable law.
> If the findings of fact entered by the director or
> administrative law judge are supported by
> substantial evidence, they shall not be altered
> by the [P]anel.

§ 8-43-301(8), C.R.S. 2019.  Whether a worker is an independent

contractor "is a factual determination for resolution by the ALJ."

*Nelson v. Indus. Claim Appeals Office*, 981 P.2d 210, 213 (Colo. App.

1998).  Therefore, like us, the Panel "must uphold the ALJ's

findings of fact if such are supported by substantial evidence in the

record."  *Id.*  Likewise, the Panel "must defer to the ALJ's resolution

of conflicts in the evidence, credibility determinations, and the

plausible inferences that [s]he drew from the evidence."  *Id.*  And the

ALJ's credibility determinations cannot be set aside unless the

evidence is "overwhelmingly rebutted by hard, certain evidence" to

the contrary.  *Arenas v. Indus. Claim Appeals Office*, 8 P.3d 558,

561 (Colo. App. 2000); *see also Youngs v. Indus. Claim Appeals*

29

*Office*, 2012 COA 85M, ¶ 46 ("Nor may we set aside a ruling dependent on witness credibility where the testimony has not been rebutted by other evidence.").

¶ 45    The Panel disregarded ALJ Jones' factual findings and credibility determinations to enter findings of its own.  ALJ Jones followed the Panel's remand order, conducted a second hearing, and considered the evidence in light of both the nine statutory criteria and the *Softrock* factors.  Indeed, ALJ Jones' November 2015 post-remand order is twenty-one pages long, contains fifty numbered paragraphs of fact findings, and ten pages of conclusions of law.  It appears to us to be a thorough analysis of all the applicable factors.

¶ 46    Accordingly, we conclude that the Panel exceeded its authority by reweighing the evidence presented before ALJ Jones.  Even though the Panel may not have agreed with ALJ Jones' decision, substantial evidence supported her factual findings and credibility determinations.  The Panel was therefore bound by them and should not have set aside the November 2015 order.  *See* § 8-43-301(8); *Nelson*, 981 P.2d at 213.  Having determined that the

Panel exceeded its authority when it set aside ALJ Jones' November 2015 order, we need not reach the merits of ALJ Cayce's order.

## VI. Conclusion

¶ 47     The Panel's final orders of April 26, 2016, and September 24, 2018, are set aside, and the case is remanded with directions to reinstate ALJ Jones' order of November 25, 2015.

JUDGE DAILEY and JUDGE BROWN concur.